365 F.2d 542
 TITAN STEEL CORPORATION, a corporation, Appellant,
v.
Jeanette WALTON, Administratrix of the Estate of Robert Walton, deceased, Rust Engineering Company, a Delaware Corporation, and Kennecott Copper Corporation, a New York Corporation, Appellees.
RUST ENGINEERING COMPANY, a Delaware Corporation, Appellant,
v.
Jeanette WALTON, Administratrix of the Estate of Robert Walton, deceased, and Kennecott Copper Corporation, a New York Corporation, Appellees.
 No. 8156.
 No. 8157.
 United States Court of Appeals Tenth Circuit.
 August 31, 1966.
 Rehearing Denied October 7, 1966.
 
 F. Robert Bayle, Salt Lake City, Utah (Wallace R. Lauchnor, Salt Lake City, Utah, on brief), for Titan Steel Corporation.
 Ray R. Christensen, Salt Lake City, Utah, for Rust Engineering Co.
 Jack L. Crellin, Salt Lake City, Utah (Donn E. Cassity, Leon A. Halgren, F. Robert Bayle, Wallace R. Lauchnor, Salt Lake City, Utah, on brief), for Jeanette Walton, Administratrix of Estate of Robert Walton, Deceased.
 George W. Latimer, Salt Lake City, Utah (Calvin A. Behle, Salt Lake City, Utah, on brief), for Kennecott Copper Corporation.
 Before MURRAH, Chief Judge, and PHILLIPS and PICKETT, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 Rust Engineering Company appeals from a judgment on a jury verdict in a wrongful death action by the Administratrix of a Titan Steel Corporation employee against Rust and Kennecott Copper Corporation, Kennecott having been exonerated by the jury verdict. Titan Steel Corporation appeals from a judgment against it on Rust's third party complaint for the amount of the wrongful death judgment, attorneys' fees and costs under the indemnity provisions of a construction subcontract between Titan and Rust. Titan also complains of a joint and several judgment against it and Rust in favor of Kennecott on Kennecott's cross and third party complaints against them respectively for indemnity for attorneys' fees and costs incurred in the successful defense of the wrongful death action. And, Titan further complains of a judgment against it to indemnify Rust's liability to Kennecott on said joint and several judgment.
 
 
 2
 The complicated litigation arose out of a prime contract between Kennecott and Rust for the construction by Rust of a "material handling system" on the roof of a building owned by Kennecott and located in Garfield, Utah. Rust subcontracted with Titan to repair consequent roof damage and to enclose the system with galbestos sheeting. In the performance of the subcontract the decedent, Robert Walton, and three other Titan employees worked together replacing corrugated sheets of transite composing the roof of the building. These sheets overlapped and were bolted to 2 by 4 inch steel girts also called purlins laid horizontally at approximately 5 ft. intervals. The men were cautioned by prominent signs on the building to walk only on the girts or planks supported by the girts because the transite sheeting would not support the weight of a man.
 
 
 3
 During the course of the work, the men were confronted with the task of replacing a transite sheet, an edge of which lay under another transite sheet upon which rested a bundle of galbestos sheeting. The bundle was 3 ft. long, 2 ft. 8 inches wide, 1 ft. 6 inches deep, weighed 850 to 1,000 pounds, and rested directly on a 4 by 4 inch block of wood which lay under the center of the bundle and directly over a girt. Another 4 by 4 inch block lay under the down slope[1] end of the bundle on the ungirted portion of a sheet of the roof. In this position the bundle was balanced over the girt and tilted along the downslope of the roof. After some discussion between the men as to whether to move the sheets one at a time or as a bundle, Walton and two co-workers stood on a wood plank spanning two girts and attempted to roll or slide the galbestos bundle 6 inches to 1 ft. apparently along the girt in order to free the sheet to be replaced. In some way not entirely clear from the record, the bundle broke through the sheeting and, taking Walton and a co-worker with it, fell some 80 feet to the floor below causing Walton's death.
 
 
 4
 In this suit Walton's Administratrix claims that his death was proximately caused by Kennecott and Rust's failure to provide a safe place to work in that they negligently placed the galbestos bundle on the roof of the building and failed to require proper planking, safety belts and lines. Kennecott denied these allegations and affirmatively alleged that Rust and Titan had supervision and control over the work and the decedent employee with the duty to take all reasonable measures for his safety; that if the decedent's death was negligently caused, such negligence was solely chargeable to Rust and Titan. Alternatively, Kennecott pleaded assumption of risk, contributory negligence and the Workman's Compensation law of Utah as the Administratrix's exclusive remedy. Consistently with its affirmative defense, Kennecott filed a cross-claim against Rust and a third party claim against Titan outlining their respective duties to the decedent and invoking the indemnity provisions of Rust's contract and Titan's subcontract for any liability incurred in the suit.
 
 
 5
 Rust answered denying the Administratrix's charges and affirmatively alleged that Titan as an independent contractor completely controlled the work and alone owed the duty to provide the decedent with a safe place to work and necessary safety equipment, and that Titan's negligence proximately caused the decedent's death. Rust alternatively pleaded contributory negligence, assumption of risk and that the Administratrix's exclusive remedy was Workman's Compensation. It also filed a third party complaint against Titan alleging in substance its responsibilities and that under the indemnity provisions of the subcontract Titan was liable for any judgment against Rust and costs incurred in this suit. Titan specifically denied that it was liable to Kennecott and Rust under the provisions of the indemnity in the contract or subcontract for any negligence on its part or for their negligence and pleaded the Workman's Compensation Act as the Administratrix's sole remedy.
 
 
 6
 After evidence to a jury on the issues thus drawn, all parties defendant moved for a directed verdict. Carefully analyzing the facts, the court indicated that "the question of placing of loads", i.e. bundles of sheeting on the roof was the real issue; that "if it weren't for this one factor, I wouldn't hesitate at all in granting a motion for a non-suit." While the instructions were not perpetuated in the record, it seems to be agreed that the plaintiff's case was submitted to the jury on the question of the existence of a trap along with the defenses herein outlined.
 
 
 7
 In the answer to agreed interrogatories, the jury specifically found that Kennecott was guilty of negligence, but that such negligence was not the proximate cause of Walton's death; that Rust and Titan were each guilty of negligence proximately causing Walton's death; that Walton was also guilty of negligence, but that his negligence was not the proximate cause of his death, i.e. he was not guilty of contributory negligence. The jury found that the reasonable compensation for the damage suffered by the surviving widow as the result of the wrongful death of her husband was $75,000. Having concluded that the special verdict resolved all questions of fact concerning the liability of all the defendants to the plaintiff, the court entered a judgment in favor of the Administratrix and against the defendant Rust for $75,000 and costs. It retained jurisdiction to make findings and enter appropriate orders on the indemnity agreements as well as subrogation rights under the Compensation Act.
 
 
 8
 The appellants then moved to set aside the jury's findings and the judgment based thereon and for a judgment of "no cause of action" in accordance with their motion for a directed verdict. The grounds for the motion were that there was no evidence that the defendants owed or breached any duty proximately causing Walton's death; that the only party owing Walton any duty to furnish him a safe place to work was his employer Titan; that therefore his only available remedy was Workman's Compensation. They further urged their pleaded defense of contributory negligence and assumption of risk as a matter of law. They pointed to the jury finding of Walton's negligence and insisted that contrary to that finding such negligence was as a matter of law the proximate cause of his death. It is, of course, axiomatic that if Walton's found negligence was as a matter of law the proximate cause of his own death, he was guilty of contributory negligence barring recovery, and the law suit ends there.
 
 
 9
 Rejecting their contentions and sustaining the jury's findings, the trial court in a carefully considered memorandum distinguished this case from Milligan v. Capitol Furniture Company, 8 Utah 2d 383, 335 P.2d 619, in which the jury found that the plaintiff was negligent in walking across an icy sidewalk where he fell yet failed to find such negligence was the proximate cause of his fall. The Utah Supreme Court held that "His injury was the natural and probable consequence of his own negligence, and only one inference or deduction is permissible, hence the question of proximate cause is one of law." In our case the trial court referred to the several asserted acts of contributory negligence, i.e. failure to complain to the union steward, to use a gas mask, to request a safety belt, to utilize additional planking, and rationalized that it could not be logically said that all of the claimed acts were the natural and probable cause of death and that the general verdict of negligence could have been based on any or all of them.
 
 
 10
 We agree with the trial court that the findings of the jury that Walton's negligence was not the proximate cause of death is a permissible inference from the facts and theory of this law suit.
 
 
 11
 This brings us to the matter of duties owing and breaches thereof, if any. As we have seen, the trial court submitted the tort claim to the jury on the theory that the placing of the bundles of sheeting on the roof in the manner shown by the evidence raised triable issues of actionable negligence attributable to both Rust and Kennecott. In a careful memorandum ruling on the post verdict and judgment motions after Kennecott had been exonerated, the court stated the proposition upon which the case was apparently submitted, namely, that as an employee of Titan, the decedent was a business invitee of Rust and that both Rust and Titan owed a legal duty to furnish him a safe place to work, i.e. not to lay a trap for the unwary workmen. Proceeding on this hypothesis, the court reasoned that by its verdict the jury said that Titan and Rust acting jointly had placed the bundle on the roof in a dangerous position, thereby creating a trap; that both knew of it and did nothing to correct it; and that "neither called the necessity of doing something about it to anyone else, supervisor or otherwise, and a man died as a proximate result."
 
 
 12
 On the question of duty owing by Rust to Titan's decedent-employee, the trial court apparently instructed the jury on the law of the case as stated in Restatement of Torts, § 343, and as adopted by the Utah courts to the effect that the owner or one in possession of land owes a business visitor the duty "to inspect and maintain his premises in a reasonably safe condition or to warn the visitor of any dangerous conditions existing thereon". Rogalski v. Phillips Petroleum Company, 3 Utah 2d 203, 282 P.2d 304; and see In re Wimmers Estate, 111 Utah 444, 182 P.2d 119. As applied to a general contractor in control of a structure or premises upon which work is being done, the rule is that such contractor is liable to an employee of another contractor rightfully using any portion of the premises for negligence in failing to keep it in a safe condition and to give warning of latent or concealed perils. See Florez v. Groom Development Company, 53 Cal.2d 347, 1 Cal.Rptr. 840, 348 P.2d 200, and cases collected in Anno., 20 A.L.R.2d 868, § 3. This rule is not inconsistent nor incompatible with the general rule of non-liability of a general contractor for torts of an independent contractor. The rule is rationalized and applied to a general-independent contractor relationship in Gulf Oil Corporation v. Bivins, 276 F.2d 753, in which the Fifth Circuit observed that responsibility for the conditions of the place of work "may depend upon the control of the premises and the control over the conduct of the work by the person against whom liability is asserted." As Judge Warren L. Jones put it, "[t]here is a distinction between an unsafe condition incident to or resulting from the work to be done and an unsafe condition inhering in the premises where it is to be done." Id. 756. Thus, an owner or general contractor in control of premises is not liable for negligent injuries to an employee of an independent contractor unless he actively participated in the negligent act causing the injury, see United States v. Page, 10 Cir., 350 F.2d 28; 20 A.L.R.2d 868, § 25, or unless he failed to warn of hidden dangers or traps on the premises of which he had or ought to have knowledge and of which the employee had not. See Gulf Oil Corporation v. Bivins, supra, citing and applying Restatement of Torts, § 343.
 
 
 13
 Here, the facts are that Titan's general field superintendent requested the use of Rust's crane operator for the placement of the galbestos bundles on the roof. Rust's superintendent in turn discussed the placement of the bundles with Kennecott's project engineer and both men agreed it would be safe so long as the bundles were on the purlins. Titan's superintendent then ordered the raising of the bundles to the roof by a crane owned and operated by Rust and directed their placement there. Rust's chief engineer made daily inspections to insure that the work was progressing in conformity with the subcontract, and Rust's field superintendent also inspected the work several times a week. Both men noticed the placement of the bundles, Rust's engineer realizing that the smaller bundles were balanced on a single 4 by 4. It is thus fairly inferable that Rust actively participated in the decision to raise the bundles to the roof and provided the means for their placement there. Rust knew of the nature of the work to be performed by Titan's employees, including the decedent. On these facts the jury was justified in the inference that Rust was in control of the premises; that it directly participated in the negligent storing of the sheeting on the roof; that it thereby created an unsafe condition or trap on the premises where the work of the decedent was to be done; and that it was consequently under a legal duty to warn of such dangerous condition. In sum, Rust owed a duty to the decedent to keep the premises in its control in a safe condition for the decedent's use and violated that duty by placing the sheeting on the roof in a negligent and hazardous manner.
 
 
 14
 But, Rust insists that its only duty, if any, was to warn Titan, decedent's employer, and since Titan already knew of the condition, it owed no further duty to decedent. Such is the law of Texas as construed and applied in Gulf Oil Corporation v. Bivins, supra. We cannot say with certainty whether the Utah courts would follow the rule in Gulf. While the question was not directly put in In Re Wimmers Estate, supra, the Utah court did hold the owner liable for failure to warn the decedent employee of an independent contractor of the dangerous condition which resulted in the death of the employee. In any event, the trial court seemed to think that the duty ran to the employee and was not satisfied by notice to the employer. We will not say that the court did not correctly apply Utah law on this question.
 
 
 15
 Since the instructions of the court on the applicable law of the case are unchallenged, our only question here is the sufficiency of the evidence to go to the jury on the question of the breach of the duty owing to the employee. We agree with the trial court that the evidence was sufficient to justify the findings of the jury to the effect that Rust breached its duty to the decedent-invitee by creating or participating in the creation of a dangerous condition on the premises under its control and by failing to warn decedent of such condition.
 
 
 16
 This brings us to Rust's plea that in moving the bundle the decedent assumed the risk and was contributorily negligent as a matter of law. Rust points out the prominent signs on the roof warning everyone that the transite would not support the weight of a man. It further says that everyone had or was charged with notice of the position and condition of the particular bundle of sheeting and the hazards, if any, connected therewith. In this regard the argument is that, after all, the independent contractor undertook to repair a faulty roof, and he and his employees were charged with and assumed the risk of the attendant hazards.
 
 
 17
 The Utah courts have defined the essential elements of assumption of risk to be "knowledge of a danger and a free and voluntary consent to assume it." Johnson v. Maynard, 9 Utah 2d 268, 342 P.2d 884, 887. But, this knowledge must be actual knowledge of the danger, and not just what could be known in the exercise of reasonable care. Id. 887. We agree with the trial court that the jury was justified in finding that "Rust was negligent in the manner of storage and that decedent was not negligent in assuming that Rust and Titan had acted with due care in placing the material on the roof." And, "[W]herever the evidence is such that reasonable minds may differ as to its existence," the issue of contributory negligence is for the jury. See Stickle v. Union Pacific R. Co., 122, Utah 477, 251 P.2d 867, 870; Malizia v. Oregon Short Line R. Co., 53 Utah 122, 178 P. 756. Certainly we cannot say as a matter of law that the decedent assumed the risk or was guilty of contributory negligence.
 
 TITAN'S APPEAL FROM THE INDEMNITY JUDGMENTS
 
 18
 Kennecott's joint and several judgment against Rust and Titan is based on the indemnity provisions of its contract with Rust to the effect that Rust was liable
 
 
 19
 "* * * for any and all claims arising from injury to employees of Contractor, or injury to any subcontractor or employees of such subcontractor arising from the performance of the Contract, and for any injury to employees of Owner, or to third persons, or to the public, or their property, caused by any act, or omission of Contractor or subcontractors * * *; and Contractor agrees to indemnify and hold Owner harmless from liability for any and all losses, claims, damages, expenses and causes of action of every nature whatsoever which may arise out of, or in connection with, the performance of the Contract and which are caused by any act, or omission, of Contractor or subcontractors, their servants, agents, or employees, or may be claimed so to do * * *"
 
 
 20
 and on its rights as third party beneficiary of the indemnity provisions of the subcontract between Rust and Titan whereby Titan assumed
 
 
 21
 "* * * exclusive responsibility for all injury or damage to persons or property * * * resulting from or arising out of the performance of the work. The subcontractor agrees to indemnify, protect and defend the Contractor and Owner against all claims, suits, losses, damages and costs, including court costs and reasonable attorneys' fees, on account of such injury or damage, except when caused by the sole negligence of the Contractor or Owner. * * *"
 
 
 22
 Rust's judgment against Titan is also based on the indemnity provisions of the subcontract.
 
 
 23
 The trial court had no difficulty construing the indemnity provisions of these contracts to embrace the asserted losses for which judgment was entered. Titan does not now seem to deny that the asserted losses came within the literal terms of the contracts. Rather, it takes the position that thus construed the contracts are unenforceable because violative of the public policy of the State of Utah where the contracts were made and performed. The argument is that the contracts unconscionably impose full tort liability for this huge construction project upon one who agreed to perform only a very small part of it and that this unequal and inequitable burden is the product of disparity in bargaining power.
 
 
 24
 Much has been said concerning the enforceability of so-called release-from-negligence contracts whereby one possessed of superior bargaining power is enabled to contract against liability for his own negligence. The federal view is that they are contrary to public policy, especially contracts affected with a public interest and involving the performance of a public duty. See Bisso v. Inland Waterways Corporation, 349 U.S. 85, 91, 75 S.Ct. 629, 99 L.Ed. 911; Dixilyn Drilling Corporation v. Crescent Towing and Salvage Co., 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78; Northwest Airlines, Inc. v. Alaska Airlines, Inc., 9 Cir., 351 F.2d 253; Restatement of Contracts § 575(1) (b). The general rule, however, seems to be that while private contracts of this type are not favorites of the law, they are enforceable provided they are made at arm's length without disparity of bargaining power, and the intent of the parties is manifestly plain and unequivocal. See Standard Ins. Co. of New York v. Ashland Oil and Refining Co., 10 Cir., 186 F.2d 44; Tyler v. Dowell, Inc., 10 Cir., 274 F.2d 890; Mohawk Drilling Co. v. McCullough Tool Co., 10 Cir., 271 F.2d 627; Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128; Sinclair Oil and Gas Co. v. Brown, 10 Cir., 333 F.2d 967. Only the other day we sustained recovery in favor of a negligent indemnitee under an indemnity agreement which, although it did not specifically protect indemnitee against his own negligence, was not contrary to Wyoming public policy because, as we said, "* * the parties could have expressly agreed * * * to include the indemnitee's own negligence." Pittsburgh-Des Moines Steel Co. v. American Surety Company of New York and Davis Construction Co., Inc., 10 Cir., 365 F.2d 412, August Term 1966, citing Chicago and North Western Ry. v. Rissler, D.C., 184 F.Supp. 98.
 
 
 25
 Utah has recently reviewed the case law on this subject in Union Pacific Railroad Co. v. El Paso Natural Gas Co., 17 Utah 2d 255, 408 P.2d 910. While it concluded that the indemnity provisions in that case were not sufficiently "clear and unmistakable" to protect the indemnitee against his own negligence, it did embrace the "majority rule" of enforceability where the intention of the parties is "clearly and unequivocally expressed".
 
 
 26
 This Utah contract was made and entered into freely and without the exercise of superior bargaining power, and it clearly and unequivocally expresses the intention of the parties. Cf. Mohawk Drilling Co. v. McCullough Tool Co., supra; Tyler v. Dowell, Inc., supra.
 
 
 27
 Nor does the contractual liability of Titan run contra to the "exclusive remedy" provisions of the Utah Workman's Compensation Law. Title 35-1-60, Utah Code Anno., 1953, provides that
 
 
 28
 "The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to such employee or to his spouse, widow, children, parents, dependents, next of kin, heirs, personal representatives, guardian, or any other person whomsoever, on account of any accident or injury or death * * *."
 
 
 29
 We have construed indistinguishably similar statutes of sister states to insulate the employer from all liability whatsoever to any and all persons whomsoever arising by operation of law, common law or otherwise, out of injury or death to a covered employee. But, we have never construed any of these comparable acts, and we know of no case construing the exclusionary language in them to forbid an employer subject to the act to freely and voluntarily contract with a third party to indemnify and save him harmless for all liability arising out of the injury or death of a covered employee. On the contrary the case law draws a clear distinction between liability of a covered employer to a third party arising by operation of law and liability created wholly by independent contract. See Peak Drilling Co. v. Haliburton Oil Well Cementing Company, 10 Cir., 215 F.2d 368; Hill Lines v. Pittsburgh Plate Glass Co., 10 Cir., 222 F.2d 854; Ryan Stevedoring Corporation v. Pan-Atlantic SS Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.
 
 
 30
 These judgments rest upon contractual obligations freely and voluntarily assumed, quite apart from any right, duty or obligation arising by operation of law. They do not offend Utah public policy.
 
 
 31
 The judgments are affirmed.
 
 
 
 Notes:
 
 
 [1]
 The roof had a 25% grade, meaning that it had a 3 ft. vertical drop or rise for each 12 feet of horizontal distance