Donald J. FREUND, Plaintiff,

v.

UTAH POWER & LIGHT, a Utah corporation; and Cablemain, Inc., a Texas corporation; Jones Intercable, Inc., a Colorado corporation; Cable TV Fund VIII–B, a Colorado partnership, and John Doe 1 through John Doe 25, Inclusive, Defendants.

UTAH POWER & LIGHT COMPANY, a Utah corporation, and Cablemain, Inc., a Texas corporation, Defendant and Third-Party Plaintiff,

v.

JONES INTERCABLE, INC., CP National Corporation, Cable TV Fund VIII–B, Konocti TV, Inc., and Alexander and Alexander, Third-Party Defendants.

Argonaut Insurance Company, Plaintiff in Intervention.

UTAH POWER & LIGHT COMPANY, Plaintiff,

v.

CP NATIONAL CORP., et al., Defendants.

Civ. Nos. C–82–0747W, C–84–0400W.

United States District Court, D. Utah, C.D.

Nov. 25, 1985.

Ralph W. Bastian, Jr., San Francisco, Cal., Jackson Howard, D. David Lambert, Provo, Utah, for Donald J. Freund.

Stephen B. Nebeker, Anthony B. Quinn, Jeffrey D. Eisenberg, Robert Gordon, David A. Westerby, Salt Lake City, Utah, for Utah Power & Light Co.

Scott W. Christensen, Salt Lake City, Utah, for Home Ins. Co.

Allan L. Larson, Salt Lake City, Utah, for Cablemain, Inc.

Glenn C. Hanni, Paul M. Belnap, Gary A. Dodge, Salt Lake City, Utah, for Jones Intercable, Cable Fund and Konocti.

Robert A. Aune, San Francisco, Cal., for Argonaut Ins.

Robert W. Brandt, Robert G. Gilchrist, Salt Lake City, Utah, for CP Nat.

Donald J. Purser, Salt Lake City, Utah, for Fireman's Fund.

Dale J. Lambert, Salt Lake City, Utah, for Alexander & Alexander.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on opposing motions for summary judgment filed by Utah Power and Light, Jones Intercable, Inc., et al, and by CP National. In addition, a motion to dismiss was filed by defendant Home Insurance Company. Oral argument was made to the court on October 18, 1985. D. David Lambert, Ralph W. Bastian, Jr. and Robert E. Aune were present on behalf of plaintiff Freund. Robert W. Brandt and Michael P. Zaccheo appeared on behalf of defendant C.P. National. Glenn C. Hanni and Mark Taylor were present representing Jones Intercable, Konocti TV, Inc. and Cable TV Fund VIII–B. Stephen B. Nebeker, Anthony B. Quinn, Jeffery Eisenberg and David Westerby appeared on behalf of Utah Power and Light. Allan L. Larson and Jerry D. Fenn appeared on behalf of Cablemain Inc., while Scott W. Christensen appeared on behalf of Home Insurance. Gary Dodge was present representing Jones Intercable and Dale Lambert appeared on behalf of Alexander and Alexander. The court took the motions under advisement and has read carefully the various memoranda filed by the parties as well as pertinent sources cited therein. Being fully advised, the court now renders the following decision and order.

### Factual Background

This lawsuit arises out of an accident on October 11, 1981, in which the plaintiff, Donald R. Freund, was injured when he came in contact with an electrical power line. When injured, Freund was splicing amplifiers into cable previously hung by Cablemain on utility poles owned by Utah Power & Light. Freund was working at the time of the accident for Jones and Fund VIII–B in the construction of a cable TV system in Washington City, Utah.

Mr. Freund has brought suit against Cablemain and Utah Power & Light. Utah Power and Light, in turn, has asserted claims against Jones Intercable based upon a written agreement between the parties known as the Facilities Attachment Agreement (hereinafter referred to as "FAA"). The FAA was originally negotiated between the predecessors-in-interest of Utah Power & Light and Jones Intercable, CP National and Summit Communications, respectively. Under the terms of the FAA, the cable TV companies may attach cables to utility poles provided they agree to indemnify the utility company for injuries which result from their activities and obtain liability insurance for the utility's benefit.

The present motions raise a number of issues. Cablemain's motion for summary judgment involves the issue of whether Jones, Fund VIII–B and Konocti were employers of Freund within the meaning of the Utah workmen's compensation laws and whether they may be liable to Cablemain based on the theory of implied common law indemnity. Both Utah Power & Light and CP National in their motions claim that under the terms of the FAA they are entitled to complete indemnity from Jones with respect to Fruend's personal injury claim. Utah Power & Light, in the alternative, claims that if it is found liable, it is entitled to recover an amount up to $500,000 based on Jones' alleged breach of the FAA agreement to provide liability insurance. Jones, in its motion, seeks a determination that it was the employer of Freund and as such is not liable to any party in the suit based on claims arising from either implied or express indemnity provisions. It maintains that workmen's compensation is the exclusive remedy here. After reviewing the record, and listening to the arguments, the court finds that there are no genuine issues of material fact so as to preclude the granting of summary judgment pursuant to *Fed.Rule Civ.Pro.* 56.

### Jones, Cable VIII–B and Konocti as Statutory Employers

Cablemain contends that the record reveals a factual question regarding Freund's employer at the time of the accident. Cablemain asserts that it is possible

that Freund was employed by Konocti as opposed to Jones. The contradictory testimony of Ronald Schmitt in his two depositions provides the basis for Cablemain's argument.

The court after reviewing the record, however, finds the facts regarding Freund's employments are clear. Jones is a Colorado corporation, qualified to do business in Utah. Fund VIII–B is a limited partnership, whose general and managing partner is Jones. Konocti is a California corporation and a subsidiary of Jones. The record shows that Jones, as part of its management style, groups all its employees together in one system under its direct control rather than having its subsidiary or limited partner hire individually. Because of this organizational style, Jones moves its experienced employees from one system to another to perform technical tasks associated with the cable TV business. Cable Fund VIII–B and Konocti have no employees but reimburse Jones for the use of its employees. In the present case, Freund worked at the Konocti location but was transferred by the Jones' management team to St. George to install components along the newly strung Fund VIII–B system cable.

The facts reveal that Freund was employed by and controlled by Jones during the time relevant to this action. That is evidenced among other things by the payroll checks and time sheets.[1] It is also clear that Freund was working on the Fund VIII system at the time he was injured. There is no evidence that Konocti was in any way involved in the circumstances giving rise to this law suit. In the alternative, if Konocti was involved, it was as Freund's employer. Utah law recognizes that there may be multiple employers of an employee and all may be entitled to the workmen's compensation defense. *Bambrough v. Bethers*, 552 P.2d 1286. (Utah 1976). The court finds that Jones, Fund VIII–B and Konocti are statutory employers of Freund and are therefore entitled to claim the ex-

clusive remedy provisions of the workmen's compensation law.

*Implied Indemnity*

■ Cablemain urges the court to find that an implied agreement to indemnify exists between Jones and Cablemain. Cablemain contends that Jones or Cable Fund VIII–B directed Cablemain to install the cable and assured Cablemain that various problems relating to the cables' proximity to the powerline would be rectified promptly. Those assurances and directions form the basis for Cablemain's implied indemnity claim.

The Utah Supreme Court has not yet ruled on whether an agreement or promise to indemnify might be implied in certain circumstances thereby avoiding the exclusive remedy provision of the Workmen's Compensation Act. *See Shell Oil Company v. Brinkerhoff Signal Drilling Company*, 658 P.2d 1187, 1191 n. 3 (Utah 1983). Cablemain argues that the Tenth Circuit Court of Appeals applying Utah law in *Barr v. Brezina Construction Co.*, 464 F.2d 1141 (10th Cir.1972) *cert. denied, Brezina Construction Co. v. U.S.*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973), suggested that an implied promise to indemnify could have been found in that case under different facts.

At this point in time, however, the Utah Supreme Court has not concluded that an implied indemnity agreement may exist in spite of the exclusiveness of Workmen's Compensation. Until the State court rules conclusively on this issue, this court will not second guess its conclusion. *Cf. Bertoch v. Marriott Corporation*, No. C82–6029 (Dist.Ct., Utah, March 13, 1984). Moreover, the Utah court has considered and rejected any constitutional challenge to the exclusive remedy provision. *Morrill v. J & M Construction Co.*, 635 P.2d 88 (Utah 1981). Cablemain's motion for summary judgment on the issue of common law indemnity is therefore denied.

---

1. Because of the undisputed evidence regarding the organizational relationship between Jones, Fund VIII–B, and Konocti, and the manner in which employees were managed by Jones, the court concludes that Jones was also the employer of Bond and Schmitt.

*The Facilities Attachment Agreement*

■ CP National, Utah Power & Light and Cablemain claim Jones, Fund VIII–B, and Konocti breached the terms of the Facilities Attachment Agreement (hereinafter referred to as "FAA"). They premise their claims on the assertion that the Jones companies ("Jones") assumed the FAA obligations of Summit Communications to CP National and its assignee, Utah Power & Light. Jones has asserted that it did not assume the obligations of the FAA when it entered into the Purchase and Sale Agreement with Summit Communications.

For purposes of this motion only and in order to decide the legal significance of various controverted portions of the FAA, the court will ignore the factual issue and will assume that the FAA is enforceable between Utah Power & Light and Jones.

*Indemnification for Utah Power & Light's Own Negligence*

Assuming that Jones and Fund VIII–B have undertaken the obligations of the FAA, the court must determine first, whether those obligations require Jones to indemnify Utah Power & Light for Utah Power & Light's negligence. Second, the court must determine whether the FAA would require Jones to reimburse Utah Power & Light based on Jones' alleged failure to provide Utah Power & Light with liability insurance.

As mentioned previously, the FAA governed use of CP National's utility poles by Summit Communications. Paragraphs 20 and 21 are indemnity provisions whose legal significance is in dispute. Those paragraphs state:

20. The Licensee shall indemnify, protect, and save harmless the Licensor from any cause of action, claim, or other legal proceeding by the Licensee's subscribers or other third persons against the Licensor in the event the continued use of poles owned by the Licensor is denied to Licensee for any reason. In addition the Licensee shall, upon demand and at its own risk and expense, defend any and all such actions, claims, or other legal proceedings.

21. *Licensee shall indemnify, protect, and save harmless Licensor from and against any and all claims, demands, causes of action, costs or other liabilities for damages to property and injury or death to persons which may arise out of or be connected with the erection, maintenance, presence, use or removal of Licensee's equipment, or of structures, guys and anchors, used, installed or placed for the principal purpose of supporting Licensee's equipment or by any act of Licensee on or in the vicinity of Licensor's poles, including, but not by way of limitation, payments made under workmen's compensation laws.* Except for intentional wrongdoing or willful negligence on the part of Licensor, or any of its agents or employees, Licensee shall also indemnify protect and save harmless Licensor from and against any and all claims, demands, causes of action, costs, or other liabilities arising from any interruption, discontinuance or interference with Licensee's service which may be occasioned or which may be claimed to have been occasioned by any action of Licensor pursuant to or consistent with this agreement. In addition, Licensee shall, upon demand and at its own sole risk and expense, defend any and all suits, actions or other legal proceedings which may be brought or instituted by third persons against Licensor or their successors or assigns on any such claim, demand or cause of action; shall pay and satisfy any said suit, action or other legal proceeding; and shall reimburse Licensor for any and all reasonable legal expenses incurred by Licensor in connection herewith.

This indemnification agreement by Licensee in favor of Licensor, shall provide Licensor with full and complete indemnification, including defense of any suits, actions or other legal proceedings resulting from any claims for damages to property and injury or death to persons and shall apply to all claims, demands, suits, and judgments of whatever nature which

shall be made or assessed against Licensor in furnishing such poles under the terms of this agreement or for any other thing done or omitted in conjunction with Licensor's dealings with Licensee. (Emphasis added).

The first sentence of paragraph 21, underlined above, covers the present factual situation. Jones argues that the sentence does not contain the kind of explicit language required by Utah law in order to hold an indemnitor accountable for an indemnitee's own negligence. Utah Power & Light, on the other hand, asserts that the first sentence must be read in conjunction with the following sentence. The first sentence is all inclusive, in contrast to the second which expressly excludes indemnification for the licensor's wrongdoing. According to Utah Power & Light, the parties' intention is clear: the utility company is to be indemnified under any and all situations which arise out of or are connected with "the erection, maintenance, presence, use, or removal" of Jones' equipment and the indemnitor is to indemnify the indemnitee regardless of who is at fault. Utah Power & Light further argues that Utah law does not require "buzz words" in order to require an indemnitor to indemnify the indemnitee for the latter's negligent acts.

The Utah Supreme Court has applied a strict interpretation standard when interpreting indemnity provisions similar to the one now before the court. The Court set forth the standard in clear terms in the case of *Union Pacific Railroad Co. v. El Paso Natural Gas Co.*, 17 Utah 2d 255, 408 P.2d 910 (1965). The Court there was called upon to interpret an indemnity contract given by a gas company seeking the use of the railroads' easements for a pipeline. Although some of the factors influencing the court's deliberations in that case are not present here, the general tenor of the court's decision and its guidelines for interpreting indemnity contracts are important. The court's conclusion favoring the gas company rested in large measure on the proposition that "the law does not look with favor upon one exacting a covenant to relieve himself of the basic duty which the law imposes on everyone: that of using due care for the safety of himself and others." *Union Pacific R.R. v. El Paso*, 408 P.2d at 913. The court then stated its understanding of the majority rule regarding the interpretation of covenants purporting to indemnify the indemnitee for its negligence:

> The majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld. But the presumption is against any such intention, and it is not achieved by inference or implication from general language such as employed here. It will be regarded as a binding contractual obligation only when that intention is clearly and unequivocally expressed.

408 P.2d at 914.

The Utah Supreme Court has continued to cite to its language in *El Paso*, quoted above, when interpreting indemnity contracts. *See, e.g. Shell Oil v. Brinkerhoff*, 658 P.2d 1187, (1983); *Union Pacific Railroad Co. v. Intermountain Farmer's Association*, 568 P.2d 724, 725 (Utah 1977). Federal court decisions applying Utah law have stressed that the parties' intention must be "clearly and unequivocally expressed." *Titan Steel Corp. v. Walton*, 365 F.2d 542 (10th Cir.1966), *Southern Pacific Transportation v. Nielsen*, 448 F.2d 121, 123 (10th Cir.1971).

The question before the court, then is whether the indemnity provisions of the FAA express "clearly and unequivocally" the intention to indemnify Utah Power & Light from losses attributable to its own negligence. The court's interpretation must be guided by the presumption against such intention and the understanding that indemnity agreements are strictly construed against the indemnitee. *Union Pacific Railroad v. El Paso Natural Gas*, 17 Utah 2d 255, 408 P.2d 910 (1965), *Shell Oil Co. v. Brinkerhoff*, 658 P.2d at 1189.

■ Jones has directed the court's attention to only three situations where courts, applying Utah law, have concluded that the

language of the contract requires an indemnitor to cover for losses caused by the indemnitee's own negligence. Those cases are: *Shell Oil v. Brinkerhoff*, 658 P.2d 1187 (Utah 1983); *Titan Steel Corp. v. Walton*, 365 F.2d 542 (10th Cir.1966); *Southern Pacific Transportation v. Nielsen*, 448 F.2d 121 (10th Cir.1971).

An examination of the indemnity provision in each of the above cases reveals that each provision expressly states the scope of the agreed upon indemnity. Each makes explicit reference to the indemnitor's obligation to indemnify the indemnitee except in situations where the injury has resulted from the sole negligence of the indemnitee. Each agreement discusses the effect of the indemnitee's negligence.[2]

The relevant language of the FAA, however, does not contain similarly explicit language. The first sentence of paragraph 21 provides in general language for the licensee to indemnify the licensor for liability arising out of "the erection, maintenance, presence, use, or removal of licensee's equipment...." Although the cause of Mr. Freund's injuries comes clearly within the scope of this provision, the sentence makes no reference to the intention of the parties regarding whether the licensor would be indemnified for its own negligence. Under Utah law, the language is not sufficiently explicit. Moreover, the second sentence of paragraph 21, the construction of which Utah Power & Light relies on to interpret the first sentence, covers claims relating to the interruption of the licensor's service. It does not relate to personal injury claims. Its usefulness as an aid in construing the intention of the first sentence is thereby limited.

■ The Utah court has made it plain that unless the contract clearly and unequivocally deals with the indemnitee's negligence, the indemnitee will not be indemnified against its own negligence. This court reiterates the words of the Utah court in *Union Pacific Railroad Company v. El Paso Natural Gas*, 17 Utah 2d 255, 408 P.2d 910 (1965) in this regard:

If it had been the intent of the parties that the defendant should indemnify the plaintiff even against the latter's negligent acts, it would have been easy enough to use that very language and to

2. The indemnity provision of the contract in *Shell Oil Co. v. Brinkerhoff*, 658 P.2d 1187 (Utah 1983) states in relevant portion:
> ... Contractor [Brinkerhoff] agrees to protect, indemnify and save Operator [Shell], its employees, and agents harmless from and against all claims, demands and causes of action of every kind and character arising in favor of Contractor's employees, Operator's employees or third parties on account of bodily injuries, death or damage to property arising out of or in connection with the performance of this agreement, *except where such injury, death or damage has resulted from the sole negligence of Operator*, without negligence wilfull act on the part of the Contractor, its agents, servants, employees, or subcontractors. *Id.* at 1189 (Emphasis added).

The factual situation presented in *Shell Oil* was similar to the one before the court. It also involved a controversy over an indemnity agreement between an employer covered by workmen's compensation and a third party who was being sued by the employee.

The pertinent language from the agreement at issue in *Southern Pacific Transportation Co. v. Nielsen*, 448 F.2d 121 (10th Cir.1971) states:
> Buyer ... agrees to indemnify and save harmless Railroad ... from and against ... all liability ... *regardless of any negligence or alleged negligence on the part of any Railroad employee or agent. Id.* at 124. (Emphasis added).

The court in *Titan Steel Corporation v. Walton*, 365 F.2d 542 (1966) decided that the intention of the parties was revealed through two contracts. The court did not distinguish between the language of the two in its discussion. One contract stated:
> ... Contractor agrees to indemnify and hold Owner harmless from liability for all losses, ... which may arise out of, or in connection with, the performance of the Contract and which are caused by any act, or omission, of Contractor or subcontractors.... *Id.* at 548.

Utah Power & Light points out that the above agreement does not explicitly delineate the scope of the indemnity obligations when the injury is caused by the Owner's negligence. The other contract however, which the Court in *Titan* considered in tandem with the first, does use more explicit language. It states:
> The subcontractor agrees to indemnify, ... the Contractor and Owner against all claims ... except when caused by the sole negligence of the Contractor or Owner.

thus make that intent clear and unmistakable, which was not done here. *Id.,* 408 P.2d pp. 913–914.

Nor is the language of the FAA sufficiently clear for this court to conclude that the parties intended that Jones contracted away its workmen's compensation defense. The Utah Supreme Court in *Shell Oil v. Brinkerhoff,* 658 P.2d 1187 (1983), held that the exclusive remedy provision of the Workmen's Compensation Act, Utah Code Ann. § 35–1–60, did not necessarily invalidate an agreement under which the employer agreed to indemnify a third-party for amounts paid to its employees. *Id.* at 1191. The court's holding in *Shell Oil* was based on an analysis of a contract that stated expressly that the indemnitor would indemnify the indemnitee even for injuries caused to employees of the indemnitor. The contract in *Shell Oil* provided that the contractor would indemnify the operator from and against:

> ... all claims, demands and causes of action of every kind and character arising in favor of Contractor's employees, Operators employees or third parties on account of bodily injuries, death or damage to property arising out of or in connection with the performance of this agreement ... *Id.* at 1189 n. 1.

Similarly, two other decisions applying Utah law have found the language of the indemnity agreement in question sufficient to overcome the workman's compensation defense because the agreement specifically mentioned indemnification for injury to the indemnitor's employees. *See Titan Steel Corporation v. Walton,* 365 F.2d 542 (10th Cir.1966); *Oregon Shortline Railroad*

*Company v. Idaho Stockyards Co.,* 364 P.2d 826 (Utah 1961).[3]

The requirement that an agreement state in express terms that an employer intends to indemnify third-parties for employee injuries serves an important public policy. The Workmen's Compensation laws provide employees with expedited compensation for the loss of earning capacity in exchange for the relinquishment of their common law causes of action against the employer. The employer, in turn, gives up legal defenses and must pay into a compensation fund in return for freedom from employee suits. Any change in this arrangement should not be lightly inferred. Accordingly, an employer's intention to waive its immunity must be clearly expressed in the agreement.

The language of the FAA does not clearly express an intention to contract away the employer's (Jones) workman's compensation immunity. There is no reference to Jones' obligation to indemnify Utah Power & Light for injuries caused to Jones' employees. The FAA is neither clear enough to overcome the presumption against an indemnitee contracting away liability for his own negligence nor to overcome the presumption against contracting away one's employer immunity under Workmen's Compensation.

### *Breach of Contract to Provide Liability Insurance*

Finally, Utah Power & Light contends that Jones must reimburse it for all losses it might incur because Jones breached its contract to provide liability insurance for the licensor's (UP & L) benefit. Utah Pow-

---

**3.** In *Titan Steel v. Walton,* 365 F.2d 542 (10th Cir.1966), the contract included a provision requiring the contractors to indemnify:

> for any and all claims arising from injury to employees of Contractor, or injury to any subcontractor or employees of such subcontractor arising from the performance of the Contract, and for any injury to employees of owner, or to third persons, or to the public, or to their property, caused by any act, or omission of Contractor or subcontractors ... *Id.* at 547–48.

In *Oregon Shortline Railroad Company v. Idaho Stockyard Company,* 12 Utah 2d 205, 364 P.2d 826 (1961), the contract provided that the contractor would indemnify the railroad against all:

> ... claims, demands, losses, costs and expenses of whatsoever nature which may arise by reason of injury to or death of any of the representatives or employees of the Contractor, or by reason of damage to or loss of any property of the Contractor, or of his agents or employees, or of others when in the custody or control of the Contractor ... *Id.* 364 P.2d at 827.

280

er's contention is based on its interpretation of paragraph 22 of the FAA. That paragraph contains the following covenants respecting the licensee's duty to insure for the licensor's benefit.

Throughout the life of this agreement, Licensee shall, *in addition to* and consistent with the provisions of Paragraph 21, maintain in full force and effect with the carrier or carriers selected by Licensee and satisfactory to the Licensor: (1) Compensation insurance in compliance with all workmen's compensation insurance and safety laws of the State of Utah and amendments thereto; and (b) Bodily injury insurance with limits of $500,000 for each person and $1,000,000 for each occurrence; and (c) Property damage liability insurance with limits of $250,000 for each accident and $300,000 aggregate.

The insurance described in (b) and (c) above *shall also provide contractual liability coverage satisfactory to Licensor with respect to all liabilities assumed by Licensee under the provisions of this agreement.* Policies of insurance obtained in compliance with the requirements of this paragraph 22 shall name Licensor as an additional insured, and shall be sufficient to satisfy the indemnification provisions of Paragraph 21 *and protect Licensor against any and all claims for personal injury, death, or property damage arising out of or resulting from this agreement.* Licensee shall furnish to Licensor copies of all policies of insurance obtained in compliance with this agreement prior to the installation of any of Licensee's equipment upon said poles and prior to the expiration of each policy year thereafter. In addition, the Licensee shall submit to Licensor certificates by each company insuring Licensee to the effect that it has insured Licensee under this agreement and that it will not cancel or change any policy of insurance issued to Licensee except after thirty (30) days notice to Licensor. (Emphasis added).

Utah Power & Light argues that the underlined clauses indicate that the parties to the FAA intended that the licensee's obligation to insure was not limited to those obligations that arise under paragraph 21's indemnity provisions. Rather, Utah Power & Light is to be insured against "any and all claims arising out of or resulting from this agreement" including those not covered by the indemnity provisions. In other words, Utah Power & Light contends that the insurance provisions should be construed so as to provide coverage for its own acts of negligence.

 Utah law in this regard is clear. A requirement to provide insurance is governed by the same rule of construction as an indemnification provision which seeks indemnification for the indemnitee's own negligence. *Kennecott Copper Corp. v. General Motors Corp,* 730 F.2d 1380 (10th Cir.1984). The intention of the parties regarding insurance coverage must be clearly and unequivocally expressed when the action on the insurance agreement sounds as an action for indemnification. *Id.* at 1382, citing *Union Pacific Railroad v. Intermountain Farmers Ass'n.,* 568 P.2d 724, 726 (Utah 1977). If the actual effect of the insurance agreement is to indemnify, then the rules governing indemnification must be applied. The court in *Kennecott Copper* states clearly that there is no difference between an agreement to purchase insurance to cover the lessor's own acts and an indemnification agreement. 730 F.2d at 1382. In either case, the presumption against insuring oneself against one's own acts will govern.

 When those standards are applied to the FAA agreement, it is clear that the insurance provisions of paragraph 22 can not be construed as providing coverage beyond that contemplated for indemnification under paragraph 21. The provisions do not state explicitly that the insurance to be provided should be such as to cover the lessor's own negligent acts.

In summary, this court finds that Jones, Konocti and Cable TV Fund VIII–B are the employers of Freund, Bond, and Schmitt within the meaning of the Workmen's Com-

pensation statutes of Utah. Under Utah law, Cablemain is not entitled to assert a common law indemnity claim against Jones. The Facilities Attachment Agreement, when examined by the exacting standards of Utah law, does not require Jones to indemnify Utah Power & Light (or any other potential party to the FAA) for its own negligence nor does it indicate a waiver of Jones' workmen's compensation defense. Finally, the FAA provisions governing the acquisition of insurance by Jones on behalf of Utah Power & Light do not require that Jones provide insurance for Utah Power & Light's own acts.

Accordingly,

IT IS HEREBY ORDERED that:

1. Cablemain's motion for summary judgment is denied;

2. Utah Power & Light's motion for summary judgment is denied; and

3. Jones Intercable, et al's motion for summary judgment is granted.