**KENNECOTT COPPER CORPORATION and The St. Paul Fire and Marine Insurance Company, Plaintiffs-Appellees,**

**v.**

**GENERAL MOTORS CORPORATION, TEREX DIVISION, Defendant-Appellant.**

**No. 81–2151.**

United States Court of Appeals, Tenth Circuit.

March 30, 1984.

---

Harold G. Christensen, Salt Lake City, Utah (with Richard K. Crandall, Salt Lake City, Utah, on the brief) of Snow, Christensen & Martineau, Salt Lake City, Utah (and with Otis M. Smith, Gen. Counsel; Douglas E. Brown and Nicholas J. Wittner, General Motors Corp., Detroit, Mich., on the brief), for defendant-appellant.

Tim Dalton Dunn, Salt Lake City, Utah (with Shirlynn White Fenstermaker, Salt Lake City, Utah, on the brief) of Hanson, Russon, Hanson & Dunn, Salt Lake City, Utah, for plaintiffs-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Kennecott Copper Corporation issued a purchase order for the lease of five Terex dump trucks from General Motors Corporation.[1] That purchase order stated that "Kennecott will provide liability and property insurance related to possession and operation of the units." Record, vol. 1, at 40. The trucks were ultimately delivered pursuant to the purchase order agreement and Kennecott obtained an insurance policy from St. Paul Fire and Marine Insurance Company with a $100,000 deductible.[2] Thereafter the brakes on one of the trucks failed, causing the truck to roll down a road and collide into an earthen berm. The truck sustained substantial damage. Kennecott and St. Paul paid for the necessary repairs and instituted this action against G.M. for breach of express and implied warranties and products liability. A jury found on a special verdict that the truck was defective and unreasonably dangerous,

---

**1.** Terex was a division of General Motors at the time.

**2.** The policy provided in part:

This Section covers all Real and Personal Property of every kind and description, the property of the Assured or of others for which the Assured may be liable or for which the Assured may have assumed liability or for which the Assured may have an obligation to insure including Improvements and Betterments to buildings not owned by the Assured, against physical loss or damage from any cause whatsoever except as hereinafter excluded.

Record, vol. 1, at 100.

and that the condition of the truck was in breach of express and implied warranties.

G.M. appeals the trial court's denial of its motion for directed verdict, the granting of Kennecott's and St. Paul's motion for directed verdict, and denial of a motion for judgment notwithstanding the verdict, all addressing the same issue: whether the provision of the purchase order regarding Kennecott's acquisition of insurance required Kennecott to obtain insurance indemnifying against the lessor's (G.M.'s) own negligence thereby precluding recovery by Kennecott and St. Paul from G.M.[3]

■ Utah law governs this diversity action. It clearly provides in cases involving indemnification that "[t]he intention of the parties govern but the presumption is against any such intention and is not achieved by inference from general language." *Union Pacific Railroad v. Intermountain Farmers Association*, 568 P.2d 724, 726 (Utah 1977).

The intention of the parties is to be determined in the first instance from the agreement under which they proceeded, in this case the purchase order. On its face the purchase order applies only to the "operation and possession" of the trucks. As an agreement, it lacks the kind of clarity contemplated by the Utah cases. In light of the presumption against indemnification, the agreement could not even be said to be ambiguous in the matter of indemnification. The trial court correctly held that indemnification was settled against G.M. as a matter of law based on the contractual language.

G.M. argues that since Kennecott's policy was broad enough to cover this particular accident, G.M. was a beneficiary of that policy and therefore immune under the cases[4] from subrogation by the owner of the policy and the insurance company. Whatever the rules may be under normal insurance law, *Union Pacific Railroad* makes clear that in an action which sounds as an action for indemnification, the agreement of the parties governs. Here the agreement was to cover the lessee's "possession and operation" of the units. The trial court was not required to reach the issue of what principles would govern in some other kind of case.

■ G.M. has tried to distinguish the indemnification cases by arguing that there is a difference between an agreement to purchase insurance to cover the lessor's own acts and an indemnification agreement. There is no support for that position in the Utah cases. *See Union Pacific Railroad*, 568 P.2d at 725, and cases cited therein. It is clear from reading the Utah cases that Utah looks to the purpose of the agreement. If the purpose is to insure the lessor against its own acts, that constitutes an indemnification agreement, and the presumptions against it prevail in the absence of a clearly expressed contrary intent. Since under Utah law agreements relieving one from one's own negligence are ordinarily "contrary to public policy," *id.* at 725 (quoting *Jankele v. Texas Co.*, 89 Utah 325, 54 P.2d 425 (1936)), we are satisfied that Utah would look to the actual effect of the agreement rather than its mere form to determine whether the rules governing indemnification should apply.

■ This is not to say that Utah would apply its public policy against design liability insurance. *See Associated McCullough Enterprises v. Sherwin Williams Co.*, C78–0051 (D.Utah Aug. 2, 1979) (order granting partial summary judgment, granting leave to file additional pleadings, and requiring joinder of insurer). As we understand the cases, they apply where it is argued that there was an attempt to shift the burden of indemnification to a lessee or

---

**3.** The same issue was the subject of three different motions for summary judgment by G.M., all of which were denied.

**4.** *See, e.g., Transamerica Ins. Co. v. Gage Plumbing & Heating Co.*, 433 F.2d 1051 (10th Cir.1970); *American Fidelity & Casualty Co. v. Simmons,*

253 F.2d 634 (4th Cir.1958); *Federal Ins. Co. v. Tamiami Trail Tours*, 117 F.2d 794 (5th Cir. 1941); *Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 57 S.E.2d 638 (1950); *General Ins. Co. v. Stoddard Wendle Ford Motors*, 67 Wash.2d 973, 410 P.2d 904 (1966).

purchaser as is argued in this case. Even so, Utah policy is not so strong that parties are forbidden to provide for indemnification if such intent is clearly expressed in the agreement of the parties as it would be in an ordinary design liability policy of insurance. The purchase order simply does not contain the degree of clarity required by *Union Pacific Railroad.*

The fact that Kennecott had in effect a policy which would cover the accident involved in this case does not detract from this decision. G.M.'s rights in this case derive from its agreement with Kennecott—not Kennecott's agreement with its insurance carrier. Nothing in the policy shows an intent of the parties to insure G.M. against its design liability.

AFFIRMED.