Donald R. FREUND, Plaintiff,

v.

UTAH POWER & LIGHT COMPANY and Cablemain, Inc., Defendants, Third–Party Plaintiffs, and Appellants,

v.

JONES INTERCABLE, INC., Third–Party Defendant and Appellee,

and

C.P. National Corporation, Third–Party Defendant and Appellant.

No. 880261.

Supreme Court of Utah.

May 18, 1990.

Robert Gordon, David A. Westerby, Stephen B. Nebeker, Anthony B. Quinn, Jeffrey D. Eisenberg, Salt Lake City, for Utah Power & Light Co.

Allan L. Larson, Jerry D. Fenn, Salt Lake City, for Cablemain.

Robert W. Brandt, Robert G. Gilchrist, Michael P. Zaccheo, Gary L. Johnson, Salt Lake City, for C.P. National.

Scott W. Christensen, Salt Lake City, for The Home Ins. Co.

Glenn C. Hanni, Paul M. Belnap, Mark J. Taylor, Salt Lake City, for Jones Intercable, Cable TV Fund VIII–B, and Konocti TV, Inc.

HOWE, Associate Chief Justice:

The United States Court of Appeals for the Tenth Circuit, pursuant to rule 41 of the Rules of the Utah Supreme Court, has certified to us the following questions of Utah law: (1) whether the exclusive remedy provision of the Utah Workers' Compensation Act, Utah Code Ann. § 35–1–60, bars a claim by a third party that a statutory employer *impliedly* agreed to indemnify the third party against claims for injuries sustained by an employee; (2) whether, under Utah law, the indemnification provision of paragraph 21 of the "Facilities Attachment Agreement" is a sufficiently clear and unequivocal agreement by Jones Intercable, Inc., to indemnify Utah Power & Light Co. for its own negligence which resulted in injuries to a Jones employee in connection with the "erection, maintenance, presence, use or removal of Jones' equipment"; (3) whether, in view of the exclusive remedy provision of the Utah Workers' Compensation Act, the language set out in paragraph 21 of the "Facilities Attachment Agreement" is explicit enough to be an enforceable agreement on the part of Jones (the employer) to indemnify Utah Power for amounts paid to Jones's employee as a result of injuries sustained by the employee; (4) whether it is a correct interpretation of Utah law that an agreement to purchase insurance to cover a third party's own negligence is governed by the same rule of construction as an indemnification agreement to indemnify a third party for its own negligence according to the Tenth Circuit's decision in *Kennecott Copper Corp. v. General Motors Corp.*, 730 F.2d 1380, 1382 (10th Cir.1984); and (5) assuming the rule of construction which governs an agreement to purchase insurance to cover a third party's own negligence is the same rule which governs an indemnification agreement, whether the language of paragraph 22 of the "Facilities Attachment Agreement" is a sufficiently clear and unequivocal agreement by Jones to obtain insurance against Utah Power's own negligence which resulted in injuries to a Jones employee.

The factual and procedural background of this case is stated in the opinion of the United States District Court for the District of Utah reported at *Freund v. Utah Power & Light*, 625 F.Supp. 272 (D.Utah 1985). In October 1981, plaintiff Donald R. Freund was injured when he came in contact with an electrical power line as he was splicing amplifiers into a television cable previously hung by Cablemain, Inc., on utility poles owned by Utah Power & Light Co. ("UP & L"). At the time of the accident, Freund was working for Jones Intercable, Inc., and Fund VIII–B, a limited partner of Jones, in the construction of a cable TV system in Washington City, Utah. He received workmen's compensation benefits from Jones.

Freund brought suit against Cablemain and UP & L, who, in turn, asserted claims for indemnity against third-party defendants Jones, Fund VIII–B, and Konocti, a subsidiary of Jones. Cablemain's claim was for implied indemnity, based on

Jones's alleged breach of an independent duty owed to Cablemain. UP & L based its claim upon a written agreement known as the "Facilities Attachment Agreement" ("FAA"), which had been entered into between C.P. National and Summit Communications, the predecessors in interest of UP & L and Jones, respectively. Under the terms of the FAA, Summit Communications was permitted to attach cables to C.P. National's utility poles, provided it agreed to indemnify C.P. National for damages and injuries which might result and to obtain liability insurance for C.P. National's protection. We shall hereafter assume, as did the federal district court, that UP & L and Jones are entitled to the benefits of and are bound by the terms of the FAA.

The federal district court granted summary judgment in favor of Jones and against Cablemain in light of the exclusive remedy provision, section 35–1–60, and the lack of controlling law in Utah as to whether an implied indemnity agreement survives that provision. The court also determined that paragraph 21 of the FAA was not sufficiently clear and unequivocal to require Jones to indemnify Utah Power against claims for injuries sustained by Jones's employees caused in whole or in part by UP & L's negligence in view of Utah case law and in view of the exclusive remedy provision. Relying on *Kennecott Copper Corp. v. General Motors Corp.*, 730 F.2d 1380, 1382 (10th Cir.1984), the court also determined that Jones's agreement in section 22 of the FAA to procure insurance was not sufficiently clear and unequivocal that it was intended to provide insurance for injuries sustained by Jones's employees as a result of UP & L's negligence.

I

■ The first question is whether section 35–1–60, the exclusive remedy provision of the Utah Workers' Compensation Act, bars a claim by a third party (Cablemain) that a statutory employer (Jones) *impliedly* agreed to indemnify Cablemain against a claim made by Jones's employee for injuries sustained. This question was left open in our decision in *Shell Oil Co. v. Brinkerhoff–Signal Drilling Co.*, 658 P.2d 1187, 1191 n. 3 (Utah 1983), which dealt with an express contract for indemnity. We held that the enforcement of the written contract was not barred by the exclusive remedy provision because the employer had voluntarily undertaken liability separate from and in addition to that owed to his employees which were imposed by the Workers' Compensation Act. This decision accords with a statement by A. Larson, in volume 2B, section 76.42 of his treatise, *The Law of Workmen's Compensation* (1989) [hereinafter 2B Larson]: "The clearest exception to the exclusive-liability clause is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee." *See also* 2B Larson, § 76.42 n. 37 (Cum.Supp. 1989); Larson, *Third–Party Action Over Against Workers' Compensation Employer*, 1982 Duke L.J. 483, 500 & n. 79.

Cablemain contends that although Jones did not expressly agree to indemnify it, an implied agreement of indemnity arises from the contractual relationship between the parties out of which Cablemain hung a television cable for Jones on utility poles owned by UP & L. Briefly, Cablemain contends that Jones gave it a sketch showing the height at which it wanted the television cable to be attached to the poles; that Cablemain expressed concern to Jones that it could not maintain the minimum clearance between the power lines and the cable required by the National Electrical Safety Code and the FAA and that Cablemain did not want to be held responsible if the lack of clearance later caused problems; that Jones represented that C.P. National had given its written permission as required by the FAA for the cable to be attached, whereas in fact it had never given such permission; and that Jones assured Cablemain that it would take responsibility to straighten out the lack-of-clearance problem. Based on these assurances, Cablemain consented to attach the cable as directed by Jones.

Cablemain urges that if it can prove that the foregoing representations and assurances were made to it, the law should imply an agreement on the part of Jones to indemnify it against Freund's claim for damages and that such an implied agreement should not be foreclosed by section 35–1–60, which provides:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to such employee or to his spouse, widow, children, parents, dependents, next of kin, heirs, personal representatives, guardian, *or any other person whomsoever, on account of* any accident or injury or death, in any way contracted, sustained, aggravated or incurred by such employee in the course of or because of or arising out of his employment, and *no action at law may be maintained against an employer* or against any officer, agent or employee of the employer *based upon* any accident, injury or death of an employee.

(Italics added.) As we consider this question, we will assume but not decide for purposes of this opinion that absent section 35–1–60, implied indemnity would lie although none of the parties cite any Utah case law on that question. The question as certified queries only whether implied indemnity survives section 35–1–60.

In his treatise at volume 2B, section 76.-11, Larson comments on the issue before us as follows: "Perhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribu-

tion or indemnity from the employer, when the employer's negligence has caused or contributed to the injury." The author demonstrates his point by reference to *American District Telegraph Co. v. Kittleson,* 179 F.2d 946 (8th Cir.1950). In that case, Kittleson, an employee of Armour & Company was injured when a repairman of American District Telegraph Company fell through a skylight in an Armour building and landed on Kittleson. Kittleson accepted workers' compensation from Armour and also sued American, alleging that American's employee was negligent in failing to ascertain whether the skylight could support his weight. American brought a third-party complaint against Armour, asserting that the injury was primarily due to Armour's negligence in allowing the skylight to become so encrusted with dirt that it was indistinguishable from the roof around it. Kittleson recovered a judgment against American for about $60,000, and the circuit court of appeals held that Armour could be held liable to American for the damages that American had to pay Armour's employee.[1] Larson frames the controversy as follows:

> Each side to the controversy has an argument in its favor which, considered alone, sounds irresistible. The employer here complains with considerable cogency that the net result is that $60,000 has been put in the employee's pocket and has left the employer's pocket, all because of a compensable injury, in spite of the plain statement in the act that the employer's liability for such an injury shall be limited to compensation payments.
>
> Yet if the third party were made to bear the entire $60,000 damages, he would argue with equal cogency that it is unfair to subject him, the lesser of two wrongdoers, to a staggering liability which he would not have had to bear but

---

**1.** Larson comments that the decisional history of *Kittleson* is representative of the zigzag approach taken on the issue over the past three decades. The Iowa Supreme Court held in *Iowa Power & Light Co. v. Abild Construction Co.,* 259 Iowa 314, 324, 144 N.W.2d 303, 309 (1966), that the Eighth Circuit had been mistaken about Iowa law. Later, in *Hysell v. Iowa Public Service Co.,* 534 F.2d 775 (8th Cir.1976), the Eighth Circuit repudiated its own *Kittleson* decision on the strength of *Abild.* Larson, 1982 Duke L.J. at 484, n. 2; 2B Larson § 76.11. A recent case declined to follow *Kittleson: Myco, Inc. v. Super Concrete Co.,* 565 A.2d 293 (D.C.App.1989).

for the sheer chance that the other parties involved happened to be under a compensation act. Why should he, a stranger to the compensation system, subsidize that system by assuming liabilities that he could normally shift to or share with the employer?

2B Larson, § 76.11; *see also Baugh v. Rogers*, 24 Cal.2d 200, 217, 148 P.2d 633, 643 (1944) (Traynor, J., dissenting) (employer made liable for damages by the "chance circumstance" that he was driving an automobile owned by a third person).

The Oregon Supreme Court, in *United States Fidelity & Guarantee Co. v. Kaiser Gypsum Co.*, 273 Or. 162, 539 P.2d 1065 (1975), interpreted Larson's appraisal of the issue as being "evenly balanced" to refer to the persuasiveness of the arguments on both sides, not to the weight of authority. The Oregon court found:

> [A] substantial majority and the better reasoned cases allow a third party to recover indemnity from an employer when the injury to the employee for which the third party was held liable resulted from the breach of an independent duty owed to the third party by the employer. This duty will be implied by law from the relationship between the employer and the party seeking indemnity.

273 Or. at 177, 539 P.2d at 1072. Larson, however, states that the majority of jurisdictions reject the implied indemnity doctrine:

> When we turn to cases arising under state law, we find a sharp divergence of opinion between the small minority of jurisdictions holding that, when the relation between the parties is based on contract, an obligation of care with accompanying indemnity obligation can be implied which survives the exclusiveness defense, and the majority that reject the implied indemnity doctrine.

2B Larson, § 76.71; Larson, 1982 Duke L.J. at 525 & nn. 254–55. Larson cites many cases in support but cites *Kaiser* as representing the minority view.

Cablemain contends that for several reasons, section 35–1–60 should not bar its action to recover indemnity from Jones under the facts of this case. First, Cablemain argues that a third party such as itself is not "[an]other person" as used in that statute whose cause of action is replaced—that the legislature did not intend to affect causes of action of anyone other than (1) the employee, (2) the natural beneficiaries of his wealth, and (3) his financial representatives. Cablemain relies upon the *ejusdem generis* rule to show that when general words or terms follow specific ones, the general must be understood as applying to things of the same kind as the specific. *Heathman v. Giles*, 13 Utah 2d 368, 370, 374 P.2d 839, 840 (1962). Thus, Cablemain argues that the phrase "or any other person whomsoever" in the Act is limited to other persons of the class designated by the specific words preceding it, each of whom is either a relative of the employee or a person claiming through or on behalf of him. Unrelated third parties do not fit into this class, Cablemain asserts, and if the legislature had intended to eliminate causes of action of all persons, it would have been totally unnecessary to state a long list of categories; "all persons" would have sufficed.

 Jones argues that the *ejusdem generis* rule does not apply in the absence of ambiguity and that there is no ambiguity in the statute. We agree. The phrase "any other person whomsoever" is unqualified. It plainly includes third parties. Additionally, this conclusion is reinforced by the last phrase of the sentence in section 35–1–60, "no action at law may be maintained against an employer ... based upon any accident...." Here again, there is no qualification of the language "no action." Thus, we are led to conclude that the legislature meant to include an implied indemnity action brought by a third party.

 Second, Cablemain asserts that its action for indemnity is not "on account of" Freund's accident, nor is it "based upon" the accident within the meaning of the statute. Rather, Cablemain argues, its claim is based upon the breach of an independent duty arising out of the contract between Cablemain and Jones to hang the television

cable on the poles. While this argument has some appeal and has found support in some cases, *Pan American Petroleum Corp. v. Maddux Well Service*, 586 P.2d 1220 (Wyo.1978); *United States Fidelity & Guarantee Co. v. Kaiser Gypsum Co.*, 273 Or. 162, 539 P.2d 1065 (1975); *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52 (Del.1970); *Westchester Lighting Co. v. Westchester County Small Estates Corp.*, 278 N.Y. 175, 15 N.E.2d 567 (1938), we conclude that indemnity should be enforced only where the employer has expressly agreed to indemnify, thereby affirmatively waiving the immunity afforded him by the exclusive remedy provision, as was done in *Shell Oil Co.*, 658 P.2d at 1191. In *Royal Indemnity Co. v. Southern California Petroleum Corp.*, 67 N.M. 137, 143, 353 P.2d 358, 362 (1960), the court refused to allow indemnity against an employer based upon an implied agreement, reasoning as follows:

> If such an agreement to indemnify were to be implied, the employer would be obligated to pay damages to an injured employee, through a third party, over and above the amount of compensation fixed by the Act, and thus impose the very liability against which the Act declared the employer should be insulated. This does not appear to be the legislative intention, and the court will not by decision alter the plain, clear language of the legislative enactment.

While we recognize that the New Mexico statute construed in that case is arguably worded more strongly than our section 35–1–60, we believe that the same result follows: the employer should not be forced by the indirect means of indemnity to contribute sums in addition to workmen's compensation for the injury or death of an employee. The Court of Appeals of Maryland, in *Standard Wholesale Phosphate & Acid Works, Inc. v. Rukert Terminals Corp.*, 193 Md. 20, 65 A.2d 304 (1949), reached the same conclusion, stating:

> The statute declares his [employer's] liability for compensation to be exclusive. If it should be construed to preserve his liability, for the payment of a sum measured in whole or in part by the damages

sustained by the employee, merely because the negligence of a third party concurred, or is claimed to have concurred, with his own in producing the injury, his liability for compensation would not be exclusive.... [I]t is essentially a liability to pay, or share in the payment of, damages for the injury to his employee, of which the statute relieves him.

193 Md. at 29–30, 65 A.2d at 308. Although *Standard Wholesale* is a maritime, stevedoring case, the underlying contractual quality of the relation makes the case relevant and applicable here. *See* Larson, 1982 Duke L.J. at 526.

In *Westchester Lighting Co. v. Westchester County Small Estates Corp.*, Chief Judge Crane, in a dissenting opinion, characterized the Workmen's Compensation Law of New York as a new system "substituted in its entirety for an outgrown and objectionable one." 278 N.Y. at 182, 15 N.E.2d at 570 (quoting *Shanahan v. Monarch Eng'g Co.*, 219 N.Y. 469, 478, 114 N.E. 795, 798 (1916)). He dissented to a majority opinion which required an employer who had paid compensation to the representatives of his deceased employee to also indemnify a third party against whom the representatives had brought a negligence action. He succinctly pointed out:

> [T]he representatives [of the deceased worker] receive a large sum of money through a negligence action from the employer merely because the money passes through the hands of a third party; and yet all concede that the employer is not liable to the representatives. To me this is mere sophistry.

278 N.Y. at 185, 15 N.E.2d at 571; *see also Hilzer v. MacDonald*, 169 Colo. 230, 237, 454 P.2d 928, 931–32 (1969) (implied indemnity denied in view of the exclusive remedy provision in the Colorado act).

Third, Cablemain urges that implied indemnity should not be barred because its negligence, if any, was merely passive or secondary, whereas Jones's negligence was active or primary. Cablemain relies on *Salt Lake City v. Schubach*, 108 Utah 266, 280, 159 P.2d 149, 155–56 (1945). Even if

we were inclined to recognize the foregoing distinction, it would not aid Cablemain. We held in *Curtis v. Harmon Electronic, Inc.*, 552 P.2d 117, 119 (Utah 1976), and in *Phillips v. Union Pacific Railroad*, 614 P.2d 153 (Utah 1980), that under section 35–1–60, an employer was not liable for contribution to a third-party tort-feasor. We reasoned that the employer was not a joint tort-feasor because his liability to the employee sprang from the Workmen's Compensation Act and not from tort law. We eschew the invitation to now cloud the law by imposing indemnity based on negligence where contribution would not lie. Furthermore, to require indemnity where Cablemain is negligent, albeit only "passive or secondary," would be to require Jones to indemnify Cablemain for its own negligence where the parties have not by clear and unequivocal language agreed to do so, as explained in part II of this opinion. *See Barr v. Brezina Constr. Co.*, 464 F.2d 1141, 1146 (10th Cir.1972), *cert. denied sub nom. Brezina Constr. Co. v. United States*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); *Ruvolo v. United States Steel Corp.*, 139 N.J.Super. 578, 354 A.2d 685 (1976) (one liable because of its independent negligence may not claim the benefit due a blameless third party of an implied indemnification undertaking by employer); *see also Myco, Inc. v. Super Concrete Co.*, 565 A.2d at 298–99 (court rejects the passive-active theory of implied indemnification as contrary to the weight of authority and instead relies on the "independent duty" theory).

Fourth, Cablemain contends that it is highly inequitable to allow an employer such as Jones to seek refuge in the exclusive remedy provision because a third party, unlike the injured employee, has not received a *quid pro quo* in exchange for giving up its right to sue the employer. This reasoning has been relied upon in reaching the decision to allow indemnification in *Pan–American Petroleum Co. v. Maddux Well Service*, 586 P.2d at 1224, in *Blackford v. Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 852–53, 118 N.W.2d 559, 564 (1962), *partially overruled on other grounds, Woodruff Constr. Co. v.*

*Barrick Roofers, Inc.*, 406 N.W.2d 783, 787 (Iowa 1987), and in *Lunderberg v. Bierman*, 241 Minn. 349, 363, 63 N.W.2d 355, 365 (1954). Closely associated with this *quid pro quo* argument is the assertion that legislatures, in enacting workmen's compensation acts, only intended to affect rights between employer and employee, not to shield the employer from common law actions for indemnity by third parties. *United States Fidelity & Guarantee Co. v. Kaiser Gypsum Co.*, 273 Or. at 162, 539 P.2d at 1065, and authorities cited therein. While we recognize the force of that argument, imposing indemnity under the circumstances of the instant case may not be equitable either. This is because Cablemain admittedly knew that the cable which it strung did not have the proper clearance from the power lines and yet would have Jones bear the entire burden of the damages. *See Woodruff Constr. Co. v. Barrick Roofers, Inc.*, 406 N.W.2d at 786 ("[W]here the proposed indemnitee aided in the creation of the hazard, the law should not imply a right to indemnity from the employer."). As opined by Larson, valid arguments exist on both sides of this issue. We can only presume that the legislature weighed the competing considerations when it enacted section 35–1–60 and can only suggest that complaints against inherent unfairness in the statutory scheme should be addressed to that body. We must grant judicial deference to what we think is the intent of the act.

Last, Cablemain contends that if section 35–1–60 precludes its claim for indemnity, it is denied access to the courts as guaranteed by article I, section 11 of the Utah Constitution (open courts provision). A short answer to this contention is that neither party has cited to us any case, and we have found none, where this Court has recognized a cause of action for implied indemnity arising out of a contractual relationship such as the one existing here between Cablemain and Jones. That being so, the enactment of the exclusive remedy provision in our Workers' Compensation Act in 1917 cannot be said to have abol-

ished a cause of action which had theretofore been judicially recognized in this state.

In conclusion, we answer the first question certified to us in the affirmative. Assuming that the remedy of implied indemnity might otherwise be available here because of the relationship of the parties, a question we do not reach, it would not survive the exclusive remedy provision of section 35–1–60. The legislative intent was to bar that remedy against the employer as part of a new system to compensate injured employees without regard to fault on the part of either, except where the employer has expressly waived the bar. *See generally Shell Oil Co.*, 658 P.2d at 1190–91.

## II

The next question is whether the indemnification provision of paragraph 21 of the FAA is a sufficiently clear and unequivocal agreement by Jones to indemnify UP & L for its own negligence which resulted in injuries to an employee of Jones in connection with the "erection, maintenance, presence, use or removal of Jones' equipment."

In a long line of cases spanning more than fifty years, we have repeatedly held that an indemnity agreement which purports to make a party respond for the negligence of another should be strictly construed. *Shell Oil Co. v. Brinkerhoff-Signal Drilling Co.*, 658 P.2d at 1189; *Union Pacific R.R. v. Intermountain Farmers Ass'n*, 568 P.2d 724, 725–26 (Utah 1977); *Howe Rents Corp. v. Worthen*, 18 Utah 2d 263, 265, 420 P.2d 848, 849 (1966); *Union Pacific R.R. v. El Paso Natural Gas Co.*, 17 Utah 2d 255, 260, 408 P.2d 910, 913–14 (1965); *Barrus v. Wilkinson*, 16 Utah 2d 204, 205–06, 398 P.2d 207, 208 (1965); *Walker Bank & Trust Co. v. First Security Corp.*, 9 Utah 2d 215, 220, 341 P.2d 944, 947 (1959); *Jankele v. Texas Co.*, 88 Utah 325, 54 P.2d 425 (1936). A party is contractually obligated to assume ultimate financial responsibility for the negligence of another only when that intention is "clearly and unequivocally expressed." *Shell Oil Co.*, 658 P.2d at 1189; *El Paso*

*Natural Gas Co.*, 17 Utah 2d at 259, 408 P.2d at 914.

As recognized by our court of appeals in *Pickhover v. Smith's Management Corp.*, 771 P.2d 664, 667–68 (Utah Ct.App. 1989), *cert. denied*, 795 P.2d 1138 (1990), there is a growing trend to relax some of the strictness of the rule of construction when the indemnity arises in a commercial context. See the cases cited there. Another example is *Niagara Frontier Transportation Authority v. Tri–Delta Construction Corp.*, 107 A.D.2d 450, 451, 487 N.Y. S.2d 428, 430 (1985), where the language of the indemnification agreement expressed in unequivocal terms the unmistakable intent of the parties that the indemnitor indemnify the indemnitee, regardless of the indemnitee's negligence, for damages arising out of the performance of the contract. Applying the strict construction rule, the court nevertheless recognized that the rule has been somewhat liberalized in New York. The court stated that the indemnification agreement had been "negotiated at arm's length between ... sophisticated business entities" and the intent was there to allocate "the risk of liability to third parties between themselves." *Id.* at 430. The court held, "In such circumstances it is not necessary that the exculpatory language refers expressly to the negligence of the indemnitee, so long as the intention to indemnify can be 'clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances.'" *Id.* at 430 (quoting *Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 339, 297 N.E.2d 80, 82 (1973)). We agree that in strictly construing the contractual language, evaluating the indemnification agreement according to the objectives of the parties and the surrounding facts and circumstances is entirely appropriate.

UP & L contends that paragraph 21 of the FAA is a sufficiently clear and unequivocal expression of indemnification, i.e., that Jones agreed to indemnify UP & L from all liability. The first sentence of that paragraph provides for indemnity from "any

and all" liability arising out of the attachment of cable equipment to poles:

> Licensee [Jones] shall indemnify, protect, and save harmless Licensor [UP & L] from and against *any and all claims, demands, causes of action, costs or other liabilities* for damages to property and injury or death to persons which may arise out of or be connected with the erection, maintenance, presence, use or removal of Licensee's equipment, or of structures, guys and anchors, used, installed or placed for the principal purpose of supporting Licensee's equipment or by any act of Licensee on or in the vicinity of Licensor's poles, including, but not by way of limitation, payments made under workmen's compensation laws.

(Italics added.) It is true that this sentence does not specifically mention the effect of any negligence on the part of the licensor. However, the broad sweep of the language employed by the parties clearly covers those instances in which the licensor may be negligent. The parties covered "any and all claims, demands, causes of action, costs or other liabilities." The word "liabilities" is particularly significant since it covers those instances where the licensor is legally liable for damages, including those where liability arises because of the licensor's negligence.

This construction of the first sentence is supported by comparing it with the next (second) sentence of paragraph 21. In contrast, the second sentence provides for indemnification for liabilities arising from any "interruption, discontinuance or interference with Licensee's service," but with express exceptions. The second sentence provides:

> *Except for intentional wrongdoing or willful negligence on the part of Licensor,* or any of its agents or employees, Licensee shall also indemnify[,] protect[,] and save harmless Licensor from and against any and all claims, demands, causes of action, costs, or other liabilities arising from any interruption, discontinuance or interference with Licensee's service which may be occasioned or which may be claimed to have been occasioned by any action of Licensor pursuant to or consistent with this agreement.

(Italics added.) This sentence clearly and unequivocally provides that the licensee's indemnity obligation extends to the licensor's actions which may cause interruption, discontinuance, or interference with licensee's service. But the parties employed language to make it clear that when the licensor's liability arose because of interruption of service to cable customers, there would be indemnification only if the liability was not predicated on "willful negligence" or "intentional wrongdoing" of the licensor.

The next (third) sentence of paragraph 21 states that the licensee shall provide a legal defense to "any and all" suits brought by third parties and to "pay and satisfy" any such suit. Finally, paragraph 21 ends with a summary statement of what the parties intended to cover in the three foregoing sentences:

> This indemnification agreement by Licensee in favor of Licensor, shall provide Licensor with *full and complete indemnification,* including defense of any suits, actions or other legal proceedings resulting from *any* claims for damages to property and injury or death to persons and shall apply to *all* claims, demands, suits, and judgments *of whatever nature* which shall be made or assessed against Licensor in furnishing such poles under the terms of this agreement or for any other thing done or omitted in conjunction with Licensor's dealings with Licensee.

(Italics added.)

We conclude that paragraph 21 as a whole expresses a clear and unequivocal intent by the parties that the licensee will indemnify the licensor from any and all liabilities, including the liability that arises because of the licensor's negligence, except when liability arises because of the licensor's intentional wrongdoing or willful negligence in the interruption of the licensee's service. The breadth of the language employed, the use of the word "liabilities" throughout the paragraph, the striking contrast reflected in the second sentence by

372

the recognition of an exception to liability, and the summary statement that "full and complete" indemnification is intended manifest a conscious effort by the parties to express their intent as clearly as our language will allow.

## III

■ The next question is whether, in view of the exclusive remedy provision of the Utah Workers' Compensation Act, the language of paragraphs 21 and 22 of the FAA is explicit enough to be an enforceable agreement on the part of Jones to indemnify UP & L for the amounts paid by UP & L to Freund as damages for his injuries.

As stated in part II, paragraph 21 requires indemnification by Jones (licensee) to UP & L (licensor) for any and all claims, etc., or other liabilities for damages to property and injury or death to persons arising out of or in connection with the "erection, maintenance, presence, use or removal of Licensee's equipment," including, but not in the way of limitation, payments made under workers' compensation laws. It is an inescapable conclusion that this coverage of indemnity includes Jones's employees. The purpose of the FAA was to give Jones's predecessor access to the utility poles owned by UP & L's predecessor so that television cable could be hung below the power lines. The licensor was understandably apprehensive about the danger associated with the licensee's utilizing the poles for its purposes. The parties certainly understood and intended that the licensee's employees would be on the poles to accomplish the "erection, maintenance, presence, use or removal of Licensee's equipment, or of structures, guys and anchors, used, installed or placed for the principal purpose of supporting Licensee's equipment...." Thus, Freund's accident had to be one of the most obvious risks against which the licensor sought to be protected. If the agreement did not afford indemnity in this situation, it is difficult to conceive what indemnity was intended by the parties. To hold otherwise would, as a practical matter, render the indemnity pro-

vision of no effect at all, which obviously was not the intent of the contracting parties. *Bartlett v. Davis Corp.*, 219 Kan. 148, 156, 547 P.2d 800, 807 (1976). This result follows notwithstanding the fact that Jones is stripped of the protection it would have otherwise enjoyed under the exclusive remedy beneficence of section 35-1-60. Jones's predecessor chose to forego that protection when it entered into the FAA. *See generally Shell Oil Co.*, 658 P.2d at 1190-91.

## IV

■ We next answer whether it is a correct interpretation of Utah law that an agreement to purchase insurance to cover a third party's own negligence is governed by the same rule of construction as an indemnification agreement to indemnify a third party for its own negligence. Support for that proposition appears in the Tenth Circuit's decision in *Kennecott Copper Corp. v. General Motors Corp.*, 730 F.2d 1380, 1382 (10th Cir.1984), wherein the court, in enunciating a strict contruction rule, relied on our case of *Union Pacific Railroad v. Intermountain Farmers Association*, 568 P.2d 724 (Utah 1977). In *Kennecott*, the court held that a provision in a purchase order for lease of five dump trucks from General Motors requiring that the lessee "provide liability and property insurance related to possession and operation of the units" did not indicate an intent, clearly and unequivocally, to require the lessee to purchase design liability insurance.

We have no quarrel with that result. However, when, as in the instant case, the parties have chosen by clear and unequivocal language to require one party to indemnify the other from liability arising from any cause including the indemnitee's own negligence, a further provision in that agreement to fund that indemnification by purchasing insurance should be construed as any other contractual language. *See Larrabee v. Royal Dairy Prods. Co.*, 614 P.2d 160, 163 (Utah 1980) (first source of inquiry is within the document itself; it should be interpreted in its entirety and in

accordance with its purpose; all of its parts should be given effect insofar as is possible); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987) (in construing contracts, the court must give effect to the parties' intentions. If possible, those intentions must be determined from an examination of the text of the agreement). A heightened rule of construction is not warranted. *See Pickhover v. Smith's Management Corp.,* 771 P.2d at 667–68, and cases cited therein.

### V

 We next answer whether the language of paragraph 22 of the FAA requires Jones to obtain insurance against UP & L's own negligence. Paragraph 22 provides that the licensee shall maintain (a) workers' compensation insurance, (b) bodily injury insurance, and (c) property damage insurance.[2] The latter two insurances are also required to provide "contractual liability coverage" with respect to all liabilities assumed by the licensee under the agreement, and the licensor is to be named an additional insured. Also, the insurance coverage is required to be "sufficient to satisfy the indemnification provisions of Paragraph 21."

It is significant that the coverage required by paragraph 22 must be at least co-extensive with the undertaking assumed by the licensee in paragraph 21. That requirement for coverage harmonizes with the requirement that the licensor be named as an additional insured. One reason, at least, why the licensor wanted to be an additional insured was to have coverage for its own negligence. *See Bartlett v. Davis Corp.,* 219 Kan. at 159, 547 P.2d at 810. We therefore conclude that paragraph 22 required Jones to obtain insurance coverage to cover liability arising from UP & L's negligence.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**2.** 22. Throughout the life of this agreement, Licensee shall, in addition to and consistent with the provisions of Paragraph 21, maintain in full force and effect with the carrier or carriers selected by Licensee and satisfactory to the Licensor: (a) [c]ompensation insurance in compliance with all workmen's compensation insurance and safety laws of the State of Utah and amendments thereto[;] and (b) [b]odily injury insurance with limits of $500,000 for each person and $1,000,000 for each occurence [sic]; and (c) [p]roperty damage liability insurance with limits of $250,000 for each accident and $300,000 aggregate.

The insurance described in (b) and (c) above shall also provide contractual liability coverage satisfactory to Licensor with respect to all liabilities assumed by Licensee under the provisions of this agreement. Policies of insurance ob- tained in compliance with the requirements of this Paragraph 22 shall name Licensor as an additional insured, and shall be sufficient to satisfy the indemnification provisions of Paragraph 21 and protect Licensor against any and all claims for personal injury, death, or property damage arising out of or resulting from this agreement. Licensee shall furnish to Licensor copies of all policies of insurance obtained in compliance with this agreement prior to the installation of any of Licensee's equipment upon said poles and prior to the expiration of each policy year thereafter. In addition, the Licensee shall submit to Licensor certificates by each company insuring Licensee to the effect that it has insured Licensee under this agreement and that it will not cancel or change any policy of insurance issued to Licensee except after thirty (30) days['] notice to Licensor.