Richard E. SCUDDER, Plaintiff,

v.

KENNECOTT COPPER CORPORATION, Defendant and Appellee.

STEARNS CATALYTIC CORPORATION, Third–Party Plaintiff and Appellant,

v.

WEYHER–LIVSEY CONSTRUCTORS, INC., Third–Party Defendant and Appellee.

No. 910480–CA.

Court of Appeals of Utah.

Feb. 12, 1993.

Rehearing Denied April 21, 1993.

Robert A. Peterson and Robert W. Payne, Salt Lake City, for appellant Stearns Catalytic Corp.

Stephen B. Nebeker, Salt Lake City, for appellee Kennecott Copper Corp.

Terry M. Plant, and Daniel D. Anderson, Salt Lake City, for appellee Weyher–Livsey Constructors, Inc.

J. David Nelson and Robert D. Dahle, Salt Lake City, for appellee Richard E. Scudder.

Before BENCH, GARFF and NEWEY [1], JJ.

BENCH, Judge:

Stearns Catalytic Corporation (Stearns) appeals from several orders of the trial court. We reverse the trial court's grant of summary judgment in favor of Weyher–Livsey Constructors, vacate that portion of the jury verdict that found Kennecott and Stearns negligent and apportioned liability only to those parties, and remand for further proceedings consistent with this opinion.

## FACTS

In 1986, Kennecott initiated a construction project known as the Utah Copper Division Modernization Project (Project). Kennecott entered into a contract with Stearns, whereby Stearns agreed to serve as Project Manager. Kennecott also entered into an agreement with Weyher–Livsey, whereby Weyher–Livsey agreed to serve as Contractor for the Project. Both contracts contained detailed indemnification agreements. The indemnification agreement in the contract between Kennecott and Weyher–Livsey required Weyher–Livsey to indemnify Kennecott or Stearns for any losses and expenses incurred by reason "of negligence or any other ground of legal liability...." The agreement also required Weyher–Livsey to indemnify Kennecott or Stearns for losses incurred as a result of Kennecott's or Stearns's own negligence unless the loss was caused by the sole negligence or willful misconduct of Kennecott or Stearns. The contract between Kennecott and Stearns contained a similar indemnification agreement that required Stearns to indemnify Kennecott.

Richard E. Scudder, an employee of Weyher–Livsey, was injured while descending a ladder designed and built by Weyher–Livsey. After receiving workers' compensation benefits, Scudder filed suit for personal injuries against Kennecott, and later amended his complaint to add Stearns as a defendant. Stearns filed a Third–Party Complaint against Weyher–Livsey, pursuant to the terms of the indemnification agreement between Kennecott and Weyher–Livsey. Weyher–Livsey filed a motion for summary judgment based upon its interpretation of the indemnification agree-

1. Senior Judge Robert L. Newey, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (1992).

ment and the exclusive remedy provision of the Workers' Compensation Act. Judge Raymond S. Uno (now retired) granted Weyher–Livsey's motion for summary judgment and dismissed the claim against Weyher–Livsey.[2]

The case proceeded to a jury trial without any participation by Weyher–Livsey. The jury returned a special verdict, finding Kennecott negligent and 20% liable for Scudder's injuries and Stearns negligent and 80% liable for Scudder's injuries. The jury found Weyher–Livsey and Scudder not negligent. Judge Leslie Lewis entered a final amended judgment based on the jury's apportionment of liability, whereupon Stearns filed a notice of appeal.

Several post judgment motions were filed. Stearns filed a motion for judgment notwithstanding the verdict (j.n.o.v.) and that motion was denied. Kennecott filed a motion for summary judgment against Stearns based on the indemnification agreement between Kennecott and Stearns, which required Stearns to indemnify Kennecott, and on the theory that Kennecott was an additional insured under Stearns's liability insurance policy. Judge Lewis granted Kennecott's motion for indemnification from Stearns, and Stearns filed a separate notice of appeal from that order.

Before this appeal was heard, Stearns and Scudder settled and released all claims between them and filed a stipulated motion for dismissal of appeals pending between them in this case. Based on the stipulation, this court dismissed Scudder's appeal from the jury verdict, judgment, and amended judgment, and Stearns's appeal from the jury verdict, judgment, and amended judgment as it pertains to Scudder.

## ISSUES

Because of the dismissal of Scudder's appeal and Stearns's appeal as it pertains to Scudder, the amount of the jury award is not at issue before this court. The portion of the jury verdict that found Kennecott and Stearns negligent and apportioned liability is, however, before this court. Stearns claims, *inter alia*, that the trial court erred (1) in granting Weyher–Livsey's motion for summary judgment and dismissing it from this action; (2) in refusing to grant Stearns's motion for j.n.o.v.; and (3) in granting Kennecott's summary judgment motion for indemnification from Stearns.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989). Because summary judgment resolves only issues of law, we give no deference to the trial court's legal determinations. *Id.* We affirm only if the decision of the trial court was correct. *Id.*

## ANALYSIS

### Weyher–Livsey's Indemnification Agreement

■ Stearns argues that Judge Uno erroneously interpreted the indemnification agreement in the contract between Kennecott and Weyher–Livsey.[3] Stearns claims that as a result of this erroneous interpretation, Judge Uno improperly granted Weyher–Livsey's motion for summary judgment. We agree.

---

**2.** Judge Uno's order reads, in pertinent part: "Stearns Catalytic Corporation's claim for indemnification by contract is invalid and excluded by the terms and conditions of its own contract, together with provisions of Utah statute and case law." Judge Uno failed, however, to explain how Stearns's claim for indemnification was excluded under the terms of the indemnification agreement.

**3.** Weyher–Livsey argues that Stearns has not perfected an appeal of Weyher–Livsey's summary judgment under Rules 3 and 4 of the Utah Rules of Appellate Procedure, and therefore this court does not have jurisdiction over this matter. After examining the record and the notices of appeal filed by Stearns, we find no merit to Weyher–Livsey's claim.

██ We are called upon to interpret the indemnification agreement in the contract between Weyher–Livsey and Kennecott. If a contractual dispute may be resolved by examining only the words of the contract, without the use of extrinsic evidence, such interpretation is a question of law which we review for correctness. *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988); *accord West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah App.1991).

██ The law is clear that indemnification agreements should be strictly construed against the drafter. *Freund v. Utah Power & Light Co.*, 793 P.2d 362, 370 (Utah 1990). The reason an indemnification agreement is strictly construed "seems to have arisen primarily to appease the concern that one who is not financially responsible for the consequences of his or her own negligence will be less careful in his or her behavior toward others." *Pickhover v. Smith's Management Corp.*, 771 P.2d 664, 666–67 (Utah App.1989). "A party is contractually obligated to assume ultimate financial responsibility for the negligence of another only when that intention is 'clearly and unequivocally expressed.' " *Freund*, 793 P.2d at 370 (quoting *Shell Oil v. Brinkerhoff–Signal Drilling Co.*, 658 P.2d 1187, 1189 (Utah 1983)). The presumption is against assuming financial responsibility for the negligence of another and "it is not achieved by inference or implication from general language." *Pickhover*, 771 P.2d at 667 (quoting *Union Pacific R.R. v. El Paso Natural Gas Co.*, 17 Utah 2d 255, 408 P.2d 910, 913 (1965)).

In *Freund*, the Utah Supreme Court interpreted an indemnification agreement that was substantively similar to the agreement in the present case. Plaintiff Freund, an employee of Jones Intercable (Jones) was injured when he came in contact with an electrical power line while working on a television cable hung on power poles owned by Utah Power & Light (UP & L). Freund received workers' compensation benefits from Jones. Freund then brought suit against UP & L, who, in turn, asserted a claim for indemnity against Jones based on a written indemnification agreement between the parties. The federal district court determined that the indemnification agreement was not sufficiently clear and unequivocal to require Jones to indemnify UP & L for claims arising in whole or in part by UP & L's own negligence. *Id.* at 364–65.

On appeal, the United States Tenth Circuit Court of Appeals certified the case to the Utah Supreme Court to interpret the indemnification agreement under Utah law. The indemnification agreement in *Freund* stated in pertinent part:

> Licensee [Jones] shall indemnify, protect, and save harmless Licensor [UP & L] from and against any and all claims, demands, causes of action, costs or other liabilities for damages to property and injury or death to persons.... Except for intentional wrongdoing or willful negligence on the part of [UP & L], or any of its agents or employees, [Jones] shall also indemnify[,] protect[,] and save harmless [UP & L] from and against any and all claims, demands, causes of action, costs, or other liabilities arising from any interruption, discontinuance or interference with [Jones's] service which may be occasioned or which may be claimed to have been occasioned by any action of [UP & L] pursuant to or consistent with this agreement.

*Id.* at 371. The supreme court examined the indemnification provision sentence by sentence and concluded that the provision "as a whole expresses a clear and unequivocal intent by the parties that [Jones] will indemnify [UP & L] from any and all liabilities, including the liability that arises because of [UP & L's] negligence, except when liability arises because of [UP & L's] intentional wrongdoing or willful negligence...." *Id.*

The agreement between Kennecott and Weyher–Livsey, under which Stearns is claiming indemnification, states in pertinent part:

> Contractor [Weyher–Livsey] agrees to indemnify and save Owner [Kennecott], its subsidiaries, parent corporation, affiliated entities, employees, Manager

[Stearns] and its agents harmless against any and all loss and expense, including attorneys' fees and other legal expense, by reason of liability imposed or claimed to be imposed by law upon Owner or Manager for damage because of bodily injuries, including death at any time resulting therefrom, or on account of damage to property, sustained by any person or persons, arising out of or in consequence of performance of the work called for by this Contract, or use by Contractor, its employees and agents, its subcontractors, their employees and agents of any materials, tools, or equipment furnished by Owner whether or not required hereunder to be furnished and whether or not such bodily injuries, death, or damage to property arise or are claimed to have arisen in whole or in part out of negligence or any other grounds of legal liability, including violation of any duty imposed by a statute, or ordinance, or regulation, on the part of Contractor, subcontractors, Owner, Manager, employees or agents of any of them, or any other person or organization, but excluding any liability caused by sole negligence or willful misconduct of Owner or Manager.

This indemnification agreement, while somewhat convoluted, is less equivocal than the indemnification agreement in *Freund* because it specifically requires Weyher–Livsey to indemnify Stearns for losses and expenses incurred by reason "of negligence or any other grounds of legal liability ... on the part of [Weyher–Livsey, Kennecott, or Stearns]." We conclude therefore that this agreement expresses a clear and unequivocal intent by the parties that Weyher–Livsey will indemnify Kennecott or Stearns from any and all liabilities, including liability that arises because of Kennecott's or Stearns's negligence unless the liability arises as a result of the sole negligence or willful misconduct of Kennecott or Stearns, in which case Kennecott or Stearns would not receive indemnification.

Weyher–Livsey had a contractual obligation to indemnify Stearns and Kennecott for any liability not incurred as a result of

the sole negligence or willful misconduct of Stearns or Kennecott. At the time summary judgment was granted, there was no showing that the liability resulted from the sole negligence or willful misconduct of Stearns or Kennecott. Judge Uno therefore erred in holding that Stearns's claim for indemnification by contract was invalid.

### Exclusive Remedy of the Workers' Compensation Act

■ Weyher–Livsey argues, however, that even if the indemnification agreement requires it to indemnify Stearns for Stearns's own negligence, the Workers' Compensation Act renders the indemnification agreement void on public policy grounds. The Workers' Compensation Act provides that "[t]he right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee ... shall be the exclusive remedy against the employer ... and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever...." Utah Code Ann. § 35–1–60 (1992). Weyher–Livsey claims that because of the exclusive remedy provision of the Workers' Compensation Act, it cannot be found negligent or held liable, as Scudder's employer, for causing Scudder's injuries. Consequently, Weyher–Livsey claims it is statutorily immune from any other civil liability that might be incurred as a result of Scudder's injuries. We disagree.

■ We are called upon to interpret the Workers' Compensation Act. Statutory construction presents a question of law, which we review for correctness. *Berube v. Fashion Centre Ltd.*, 771 P.2d 1033, 1038 (Utah 1989); *accord Butterfield Lumber Inc. v. Peterson Mortgage Corp.*, 815 P.2d 1330, 1332 (Utah App.1991).

The exclusive remedy provision of the Workers' Compensation Act was addressed directly by the Utah Supreme Court in *Shell Oil Co. v. Brinkerhoff–Signal Drilling Co.*, 658 P.2d 1187 (Utah 1983). Brinkerhoff was an independent contractor engaged in drilling oil wells for Shell. Shell and Brinkerhoff had entered into a contract whereby Brinkerhoff had expressly agreed

to indemnify Shell against all claims arising out of injuries to Brinkerhoff's employees except where the injury resulted from the sole negligence of Shell.

An employee of Brinkerhoff was injured when a drilling rig coupling failed and high-pressure drilling mud struck him. The employee filed an action against Shell who in turn filed a third-party complaint against Brinkerhoff, contending that Brinkerhoff was required to indemnify Shell for the amount of any judgment the employee took against Shell. Before trial, Brinkerhoff moved for summary judgment on Shell's third-party complaint, arguing that its agreement to indemnify Shell was unenforceable as a matter of law because, among other reasons, "the exclusive remedy provision of Utah's Workmen's Compensation Act ... gives an employer immunity from actions by third parties seeking indemnity for amounts paid to its employees...." *Id.* at 1189.

The trial court granted Brinkerhoff's motion for summary judgment. In reversing, the supreme court discussed the statutory scheme created by the Workers' Compensation Act.

Under the new system of rights and obligations ... injured employees can obtain compensation without proving the employer's negligence or enduring the expense and delay of court litigation. In return, the employee relinquishes all common law causes of action against his employer. Hence, as we have often stated, the recovery of benefits under the Act is an injured employee's exclusive remedy against his employer.

*Id.* at 1190 (citations omitted). The supreme court went on to state, however:

A third-party action for contract indemnification from the employer is not "on account of" an employee's injury, nor is it an action "based upon" an employee's injury. *Rather, it is an action for reimbursement based upon an express contractual obligation between employer and the third-party plaintiff. That contractual obligation is independent of any statutory duty the employer may owe his employee.*

*Id.* at 1190–91 (emphasis added) (citations omitted). The supreme court further stated that "the exclusivity provision does not bar the enforcement of a written contract between a third party and the employer in which the employer voluntarily undertakes liabilities separate from or in addition to those owed to his employees by operation of law." *Id.* at 1191 (citations omitted). The court then concluded:

For the foregoing reasons, we hold that the exclusive remedy provision of the Workmen's Compensation Act. § 35–1–60, does not invalidate an express agreement under which the employer agrees to indemnify a third party for amounts paid to its employees. As a result, the Act does not bar Shell's enforcement of the indemnity clause in its written contract with Brinkerhoff.

*Id.* at 1191 (footnote omitted). *See also Freund,* 793 P.2d at 372 (the indemnification agreement "stripped" the employer of the protection against civil liability it would have otherwise enjoyed under the exclusive remedy provision of the Workers' Compensation Act).

*Shell Oil* clearly stands for the proposition that the Workers' Compensation Act does not prohibit or alter express contractual indemnification agreements such as the one in the present case. Weyher–Livsey presents no argument as to why we should depart from this established precedent. Therefore, Weyher–Livsey's claim that it does not have to indemnify Stearns under the indemnification agreement because of the operation of the Workers' Compensation Act is without merit. Insofar as Judge Uno concluded that the Workers' Compensation Act precluded the operation of the indemnification agreement, he was in error.

Judge Uno's ruling is contrary to the express terms of the contract as well as the supreme court's ruling in *Shell Oil* interpreting the exclusive remedy provision of the Workers' Compensation Act. We therefore reverse the trial court's grant of summary judgment in favor of Weyher–Livsey.

### Prejudicial Effect of the Erroneous Grant of Summary Judgment

█ Stearns argues that Weyher–Livsey's absence from the trial, as a result of the erroneous grant of summary judgment, prejudiced the final jury verdict that found Kennecott and Stearns negligent and apportioned liability only to those parties. We agree.

Ordinarily, an erroneous grant of summary judgment may be remedied simply by vacating the judgment and remanding for further proceedings because the summary judgment terminated all proceedings below. In this case, however, the proceedings continued against Kennecott and Stearns following the improper grant of summary judgment in favor of Weyher–Livsey. Those proceedings resulted in the jury apportioning full liability between Kennecott and Stearns.

We must determine therefore whether Weyher–Livsey's absence from the proceedings was inconsequential or whether it resulted in prejudice to Kennecott or Stearns. We will not set aside an ultimate jury verdict in a multi-party case where there was an erroneous grant of summary judgment dismissing one party to the case unless the absence of that party is prejudicial to the ultimate verdict.

The harmless error analysis proceeds under Utah Rule of Civil Procedure 61 and *State v. Verde*, 770 P.2d 116 (Utah 1989). "Harmless error" is defined in *Verde* as an error that is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." Put in other words, an error is harmful only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, (Utah 1991) (citations and footnotes omitted). Our task, therefore, is to determine whether a different outcome on the summary judgment motion would have had a reasonable probability of affecting the ultimate outcome of the case.

Weyher–Livsey, while listed on the special verdict form, was not present at the trial. The jury returned a special verdict that found Weyher–Livsey not negligent and consequently apportioned no liability to Weyher–Livsey. It is logical that in apportioning liability the jury would seek to impose full liability on parties actually involved in the lawsuit, and not on Weyher–Livsey, a phantom defendant who did not participate in the trial. Moreover, the jury was likely left with the impression that, as a result of Weyher–Livsey's dismissal from the case by the trial judge, it could not be negligent and therefore liable for Scudder's injuries. Had Weyher–Livsey been required to participate in the trial, and to explain its actions and responsibilities, there is a reasonable probability that the jury would have found Weyher–Livsey negligent and apportioned at least some liability to Weyher–Livsey. If the jury had found Weyher–Livsey negligent and apportioned any liability to it, the indemnification agreement between Kennecott and Weyher–Livsey would have required Weyher–Livsey to indemnify Kennecott and Stearns in full. Consequently, the absence of Weyher–Livsey at trial as a result of the erroneous grant of summary judgment was sufficiently prejudicial so as to undermine our confidence in the ultimate verdict. We therefore vacate that portion of the jury's verdict that found Kennecott and Stearns negligent and apportioned liability, and remand for new proceedings including Weyher–Livsey as a party. *See Eckard v. Smith*, 545 P.2d 501, 502 (Utah 1976) (it is the "duty of the trial court after remand to place the parties, insofar as possible, in the position they had before the erroneous decree and judgment which was rendered").[4]

## CONCLUSION

The trial court erred, as a matter of law, in granting Weyher–Livsey's motion for

---

**4.** We also note that the granting of Weyher–Livsey's motion for summary judgment dismissing it from the case, and the granting of Kennecott's summary judgment motion for indemnification from Stearns, is inconsistent. The trial court's inconsistent interpretation of the indemnity provisions of the two contracts cannot be reconciled and is contrary to substantial justice under Rule 61 of the Utah Rules of Civil Procedure.

summary judgment and in dismissing it from the case. We therefore reverse the trial court's grant of summary judgment to Weyher–Livsey. Inasmuch as we conclude that in the absence of the erroneous grant of summary judgment there is a reasonable likelihood of a different outcome for Kennecott or Stearns, we also vacate that portion of the jury verdict that found Kennecott and Stearns negligent and apportioned liability, and remand for further proceedings consistent with this opinion. In view of this disposition, we need not reach the additional issues raised on appeal.

GARFF and NEWEY, JJ., concur.